# EXHIBIT 1

```
                                                                  1


 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
     CVIN LLC (d/b/a VAST NETWORKS) a
 4   California Limited Liability Company,   : CIVIL ACTION
                                             :
 5                   Plaintiff,              :
     v                                       :
 6                                           :
     CLARITY TELECOM, LLC (d/b/a VAST        :
 7   BROADBAND), a Delaware Limited          :
     Liability Company; and DOES 1-100,      :
 8                                           : NO. 17-417-LPS
                   Defendants.
 9
                                - - -
10
                         Wilmington, Delaware
11                       Monday, October 2, 2017
                         Oral Argument Hearing
12
                                - - -
13
     BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge
14
     APPEARANCES:                        - - -
15

16              RICHARDS, LAYTON & FINGER, LLP
                BY:  KELLY E. FARNAN, ESQ., and
17                   NICOLE K. PEDI, ESQ.

18              and

19              COBALT, LLP
                BY:  VIJAY K. TOKE, ESQ.
20                   (Berkeley, California)

21                      Counsel for Plaintiff

22

23

24

25                                  Brian P. Gaffigan
                                    Registered Merit Reporter
```

## Page 2

APPEARANCES: (Continued)

    DEVLIN LAW FIRM, LLC
    BY: JAMES M. LENNON, ESQ.

       and

    ALSTON & BIRD, LLP
    BY: LARRY C. JONES, ESQ.
      (Charlotte, North Carolina)

      Counsel on behalf of Defendant
    Clarity Telecom (d/b/a Vast Broadband)

        - oOo -
      P R O C E E D I N G S
(REPORTER'S NOTE: The following hearing was held in open court, beginning at 12:08 p.m.)

THE COURT: Good afternoon. I'll have you put your appearances on the record, please.

MS. FARNAN: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MS. FARNAN: Kelly Farnan from Richards Layton & Finger on behalf of the plaintiff. I'm joined at counsel table by Vijay Toke from Cobalt and Nicole Pedi from my office.

## Page 3

MR. TOKE: Good afternoon.

THE COURT: Welcome.

MS. FARNAN: And just in terms of proceeding today, Your Honor, it would be our preference to do one motion, then the other. I think the defendants would prefer to move together, so whatever Your Honor's preference is we'll do.

THE COURT: Okay. Thank you.

MR. LENNON: Thank you.

THE COURT: Good afternoon.

MR. LENNON: Good afternoon, Your Honor. Jim Lennon of the Devlin Law Firm and Larry Jones of Alston & Bird representing Clarity Telecom, LLC.

THE COURT: Thank you. And did Ms. Farnan accurately represent the defendant's preference as to how we proceed?

MR. JONES: I would rather argue both motions. There is an overlap in the subject matter of the motion to transfer and the motion to dismiss in that each deals at least in part with where the allegedly infringing activities occurred, and so I'll do it the way you want to do it. I would prefer to just go from the motion to transfer into the motion to dismiss the cases.

THE COURT: And is the same individual arguing both motions on the plaintiff's side?

## Page 4

MS. FARNAN: Yes, Your Honor. Mr. Toke is going to handle both motions for us.

THE COURT: All right. Well, I'll allow the defendants to argue both at the same time, if you wish. I'll tell you I'm mostly focused on the motion to transfer but certainly say whatever you like about the motion to dismiss as well. It's all up to your time limit, of course, which will start now.

MR. JONES: Thank you.

Your Honor, this presents a rather unique set of circumstances at least in my career. I'm sure you have seen something like this before. But this presents a motion for transfer and a situation where there is a plaintiff that is not a Delaware company suing a defendant that is not a Delaware company -- excuse me -- who is a Delaware company but who has no business activities or operations in Delaware and even the plaintiff has no business operations in Delaware. So the single thread between the activities that gave rise to this lawsuit and the activities of the parties is the fact that my client is a Delaware LLC.

THE COURT: Well, they say that when your customers are in Delaware, they can do business with you from Delaware; is that correct?

MR. JONES: That is incorrect, Your Honor. My client is your standard cable, Internet, telephone

## Page 5

combination provider. It is limited by law. It is limited by local franchise agreements and state laws to servicing customers with those Internet broadband services only in parts of South Dakota, Iowa, and Minnesota.

If you go to your office, sure, you can access my client's website, and you may like what you see there, but when you try to order my client's services, and you input where you live by zip code or whatever, you will be told: Sorry, we cannot provide services to you.

So Delaware residents are not subject to my client's advertising or promotion or the provision of its services. The only thread between my client's activities and Delaware is the fact that it is a Delaware company.

THE COURT: So maybe I wasn't clear. My understanding is if I was one of your customers, let's say, in South Dakota and I had occasion to travel to Delaware and I had some sort of device with me and I wanted to access the Internet or maybe watch cable TV that I could do that through you because I'm a customer of yours even though I am actually in Delaware. Is that true?

MR. JONES: That is true. You could access, if you were a resident, each of those territories and brought your iPad or iPhone with you. You could utilize the services while traveling, but you could never get the services initially. And, as I said, the services would not be advertised and

### Page 6

promoted here.

So the problem is if you exercise your discretion and retain venue in this case when there is only that nexus, the fact that it's a Delaware company to begin with, then what you are basically saying, with all due respect, is any Delaware company can be sued under the general venue statute and venue will rest here for anything that that Delaware company does anywhere in this country, and I don't think that comes within the limitations that the courts have put on the application of the general venue statute.

Now, when you look at the general venue statute, it doesn't tell you a lot definitively. It tells you that this decision depends upon what you deem to be the convenience of the parties and the witnesses and the interest of justice. And then the courts have given you a list of factors which you are very well familiar with and the plaintiff is trying to score big points on the very first of the private interest factors, that is the plaintiffs own preference for the venue for this lawsuit.

However, the plaintiff itself is not even a Delaware company, and the courts have said that when the plaintiff is not itself a Delaware company or a company in the state in which it chose venue, then the plaintiff's preference is to be given very little deference -- very little deference. The minimal amount of deference would be

### Page 7

appropriate here.

The status of our client as a Delaware company selling products or services which might migrate with its customers in their service area to Delaware, that only proves that you may exercise your discretion and retain venue of the lawsuit, but it does not inform the decision that the interest of justice, and the convenience of the parties would be favored by retaining the lawsuit here.

In fact, the plaintiff does not, in my opinion, posit any particular facts that would inform or support the conclusion that retaining the lawsuit here is for the convenience of the parties. One party will have to travel across the entire country for any activity in this lawsuit. One party will have to travel halfway across the country for trial or activity. It is not convenient to travel twice as far even though you don't have to do it very many times. So you can't say their choice of venue here is promoting the convenience of the parties.

THE COURT: Aren't we essentially talking about traveling I guess from California to St. Louis or Philadelphia? Isn't that what it pretty much comes down to?

MR. JONES: I think so.

THE COURT: So on what basis could I conclude that there is any real material difference other than another hour or hour and-a-half I suppose in the air?

### Page 8

MR. JONES: Then you need not weigh that factor very heavily against us. Maybe we should get some deference though because there is some inconvenience. It is anti-convenient, maybe only to a small extent.

THE COURT: Well, going back to what weight to give their preference of Delaware as the forum. I recognize there are cases that say what you have said, but there are other cases that say when there is legitimate and rational reasons for that selection, that it still gets some significant weight. So I guess, tell me why I shouldn't follow those cases. And, secondarily, do you dispute that the plaintiff has legitimate and rational reasons for preferring Delaware?

MR. JONES: The reason is it can get away with it was Delaware is the state of residence of the defendant.

THE COURT: Is that illegitimate or irrational?

MR. JONES: It is permissible. I don't think -- when you talk about whether it is irrational, you have to consider what are the other factors that go into this lawsuit? What activities give rise to the infringement claim?

The plaintiff in its own brief says that these claims arose out of activities in the Clarity service area, those three states that I mentioned. Plaintiff's own brief also says that confusion, if it occurred, will have occurred in that area, the Clarity service area.

### Page 9

From trying trademark lawsuits, plaintiff's counsel knows, as do I and as does the Court, that if there is a survey to vet the issue of the likelihood of confusion, the survey has to be directed to the customers or potential customers who are subjected to the allegedly infringing activities. You are not going to be conducting -- we're not going to be conducting, that is, a survey of people in Delaware because I'm confident that you would not consider that to be probative of whether the people in the Clarity service area are likely to be confused when exposed to the Vast trademark.

THE COURT: But, of course, you are not going to do it in the Eastern District of Missouri either, so what relevance does that have that you are not asking to transfer the case to where the claim arose, where the confusion would arise?

MR. JONES: There are third-party witnesses apparently that the plaintiff is going to count on, and it says so in its brief.

I'm sorry. I'm having some vision troubles this morning.

THE COURT: Are you okay? Do you need a break?

MR. JONES: No, no. I, I ...

THE COURT: If you are okay, you need not explain.

## 10

1  MR. JONES: I spent most of the night on the
2  telephone with American Airlines trying to find this suit.
3  THE COURT: Oh, I'm sorry to hear that.
4  MR. JONES: My eyes are tired this morning. I
5  am having trouble.
6  So, no, the survey would be targeted at the
7  residence within that geographic territory in the Midwest,
8  which is a very short distance from the Eastern District
9  of Missouri.
10  THE COURT: So it may be more convenient. I
11  hear that. I guess the larger point, though, is you face a
12  heavy burden. You don't dispute that. It's the law here
13  in the Third Circuit. And one of the things that makes
14  this not quite unique but interesting is that a lot of the
15  factors you point to, to say why Delaware is not convenient,
16  point towards a District that you don't want to go to. You
17  want to go to where you are physically located, but that is
18  not where your company operates.
19  MR. JONES: Then the Court may exercise its
20  discretion and transfer this lawsuit to a nearby District
21  within Iowa, Minnesota, or South Dakota if the Court thinks
22  that that is more rational and would be more convenient
23  for the parties and the witnesses. And as I said, the
24  plaintiff, in its own brief, says that there are witnesses
25  in our service area.

## 11

1  I would also point out that in the plaintiff's
2  brief, they say at page 13, "trademark infringement claims
3  are deemed to arise where the passing off occurs or where
4  the allegedly infringing products are sold to customers who
5  may be confused.
6  They know that the heart of this lawsuit is what
7  is going on when my client uses Vast to sell, offer to sell,
8  and provide those services.
9  That activity, if not in sight to Missouri, is
10  close by, in one of the nearby states. The activities that
11  are conducted by the folks on the ground are managed from
12  Sikeston, Missouri in the Eastern District of Missouri. The
13  decision to document the allegedly infringing mark was made
14  by the officers in Sikeston, Missouri using the services of
15  a branding company that is based in the Eastern District of
16  Missouri.
17  So there is a strong factual nexus between the
18  operative facts of this lawsuit and Missouri and its nearby
19  geographic areas. There is no such nexus with Delaware.
20  And, again, I point out that you can buy, if
21  you go down and buy -- if I bought doughnuts from a local
22  doughnut shop in North Carolina before I left yesterday and
23  came up here to Delaware and ate them for breakfast this
24  morning and got ill, I may have gotten ill in Delaware but
25  the activity that has to be analyzed and is subjected to

## 12

1  legal standards is activity that occurred in North Carolina
2  where those doughnuts were made.
3  The fact that a defendant's product will migrate
4  across the country from time to time as people put things in
5  their car or their bags such as their iPads and iPhones is of
6  no particular consequence, Your Honor. And the courts have
7  made it very clear that it is of no particular consequence
8  that you can access an Internet website from anywhere in this
9  country, or anywhere in the world. That does not play in the
10  rational analysis of what is convenient for the third-party
11  witnesses and what is in the interest of justice.
12  That is outside I submit the legitimate interest
13  of justice to subject a defendant that is a localized business
14  to venue having to defend a lawsuit by a company that is a
15  West Coast company, operates only in the Fresno, California
16  area who chooses to sue in Delaware for some reason.
17  And I think I know what the reason is, but that
18  doesn't come into the analysis. Their reason doesn't come
19  into the analysis. At least, the reason I'm thinking of
20  doesn't come into the analysis. They can justify their choice
21  because the law says they can sue us here.
22  THE COURT: Your client chose to be a Delaware
23  entity. It's hard to be persuaded by the argument that it's
24  against the interest of justice for them to be sued in the
25  very state where they chose for whatever reason they chose

## 13

1  to become an entity.
2  MR. JONES: Then I submit, Your Honor, that
3  what this Court would be saying to the world is any of the
4  gadzillion Delaware LLCs and corporations may be sued by
5  anyone in this country in Delaware for any cause of action
6  that does not have its own special venue statute, such as
7  the patent venue statute, but for those causes of action
8  which are controlled by the general venue statute, then such
9  a ruling would be saying that the doors of this courthouse
10  are not only welcoming, we're going to retain every lawsuit
11  against every Delaware corporation filed for any reason by
12  anybody from anywhere about activities conducted anywhere.
13  That is eviscerating the standard of the
14  convenience of the parties and the interest of justice.
15  That is saying, no, the determining factor was the defendant
16  a Delaware LLC or a Delaware corporation. That is not
17  dispositive of the issue.
18  THE COURT: Well, it wouldn't necessarily, and I
19  would not intend it at least to be that that is dispositive,
20  but as you have acknowledged, it is the law permits them to
21  sue your client here. That triggers an analysis under *Jumara*
22  where the burden is very much on you, and it is a heavy burden
23  under the case law, and it requires the Court to do a fact
24  specific analysis as to the interest of convenience. And
25  here, among other things, you chose to ask me to analyze a

## Page 14

1  preference of a District which is not the one where the case
2  arose, so I'm not sure that a decision to deny your motion
3  could reasonably be spun in the way you are arguing.
4         MR. JONES:  Well, Your Honor, you may transfer
5  it to any jurisdiction where the case may have been brought.
6  While my client is not a Minnesota, Iowa, or South Dakota
7  corporation, another venue statute -- excuse me -- another
8  statute says that the claim could be brought where the cause
9  of action arose, so you may transfer the case to one of those.
10         THE COURT:  Sure.  But the *Jumara* factor is the
11  defendant's preference, and at least up until this discussion,
12  my understanding was your preference was the Eastern District
13  of Missouri, and that is what I am focused on.
14         MR. JONES:  I apologize.  I do think that there
15  is a strong nexus with the Eastern District of Missouri,
16  more so than with either of those other three individual
17  areas.  Part of the operations which are managed by Missouri
18  people in the Missouri office occur in each of those three
19  states, but the core of the company, the location of the
20  direction of the company, the location of where the choice
21  was made to undertake this brand of three years ago, all
22  of that was in Missouri.  So we chose to ask for it to
23  be transferred to Missouri because we think Missouri is
24  more sufficiently or more significantly connected to the
25  operative facts than either South Dakota, Iowa, or Minnesota.

## Page 15

1  But if you consider the factor, if you consider that South
2  Dakota, Iowa and Minnesota are, their activities there are
3  relevant, then that, too, would support a conclusion that
4  the venue for the case will be more convenient for all those
5  people in Missouri than in Delaware.
6         Are there any other particular *Jumara* factors
7  that the Court would like to question me about?
8         THE COURT:  That's entirely up to you.
9         MR. JONES:  I do think that where the claim
10  arose has to be considered to be a very, very significant
11  factor.  And I do think that undoubtedly that weighs heavily
12  in favor of the transfer to the Midwest, be it Missouri or
13  one of those other areas, because that is no doubt where the
14  claim arose.  That is where the idea was given birth.  That
15  is where it was adopted.  That is where the activities had
16  been managed.
17         So that factor definitely weighs heavily in our
18  favor whereas the plaintiff's choice, because it's not even
19  a Delaware company, is to be given little deference.  So if
20  you are scoring points, and you are not supposed to score
21  points, I know, but that is a significant factor that
22  undoubtedly weighs in our factor.
23         Some of these others are more or less neutral.
24         I will say this.  There is a public interest
25  factor that deals with the interest of the respective fora

## Page 16

1  in the outcome of the case.  And I would submit this being a
2  trademark infringement case in which the Court is ostensibly
3  protecting the customers from confusion, it is the consumers
4  who are in or near Missouri that the Court is to protect.
5  It has no particular interest in protecting the consumers of
6  Delaware because we are not lawfully allowed to come here.
7         With respect to the statutory claims, the motion
8  to dismiss, they are basically claims that sound in trademark
9  infringement.  And as I mentioned earlier, for the reason that
10  the activities, the operative activities that give rise to
11  these claims are not affecting Delaware consumers, then the
12  consumer protection statute should not apply to what my client
13  does in South Dakota, Iowa, and Minnesota from operations
14  managed in Missouri.  That is not anything that remotely
15  affects Delaware residents and businesses.
16         Thank you.
17         THE COURT:  That's it?  Okay.  We'll save your
18  time for rebuttal.
19         Now we'll hear from plaintiff.
20         MR. TOKE:  Good afternoon, Your Honor.  I'll,
21  of course, address the motion to transfer first.
22         As the Court noted, the defendant bears the
23  burden in a motion to transfer.  It is a heavy burden.  The
24  Third Circuit and this Court have repeatedly ruled that.
25  And Clarity has failed to meet that burden.

## Page 17

1         I'll first turn to the issue of the plaintiff's
2  -- the deference of the plaintiff's decision to sue here in
3  the District of Delaware.
4         While it's true that there are some cases from
5  this District that indicate that where a plaintiff has
6  chosen to sue here but is not on its home turf, that that
7  decision is entitled to some lessened deference, but it
8  seems to me that the exception to the exception is where
9  there is some rational basis for that choice.  Here, that
10  rational basis is eight.
11         First, the fact that the defendant here is
12  incorporated in Delaware is a rational basis for filing
13  here.
14         And the discussion the Court just had with
15  Mr. Jones underscores exactly why this was the best choice
16  for venue.  The fact is, our home turf of California, as we
17  indicated in our opposition papers, we weren't clear whether
18  or not we would have personal jurisdiction over the
19  defendant.  Therefore, we had to chose some other District.
20         Now, as Mr. Jones has indicated, the service
21  area is in three separate Districts and the headquarters are
22  in yet a fourth state.  These are separate and disparate
23  areas which left us with the quandary of which District do
24  we go to?
25         Well, the easiest District then and most logical

## Page 18

1   District then was the state of incorporation. The law
2   allows us to sue here, and that rational decision allowed us
3   to place in one District this case versus having to choose
4   between several Districts that have service areas that fall
5   within the service area of the defendant or where they were
6   headquartered. That is a rational basis for suing here.
7              Moreover, this Circuit and this District sees a
8   lot more IP cases than the Eastern District of Missouri and
9   has a well developed and stable case law in that area. All
10  rational bases for suing here in the District of Delaware.
11  As a result, that decision should receive extreme deference,
12  not the little deference that Clarity suggests.
13             Turning then to the joint factors themselves.
14  I'll first start with the private factors, the
15  convenience of the parties. This Court has repeatedly noted
16  that we don't look to the convenience of the parties, of the
17  witnesses for discovery. That is a local event. But for
18  trial, Clarity has not identified a single witness who could
19  not travel to, would not be available at trial. They have
20  not met their burden.
21             Secondly, with regard to documents. With
22  technological advancements today, documents even if located
23  in Missouri or Iowa or wherever are not difficult to produce
24  at trial here. Once again, Clarity has not met its burden.
25             With regard to the public factors. By Clarity's

## Page 19

1   own admission, most of the factors are neutral or do not
2   favor transfer.
3              With regard to the public policy, this District
4   and the Delaware courts do have an interest in adjudicating
5   federal claims like Lanham Act claims that can affect Delaware
6   corporations, as we have alleged in the complaint. A number
7   of our client's customers, not their local customers but the
8   national customers, are large corporations, many of which are
9   Delaware corporations.
10             We have also alleged by implication that a
11  number of the defendant's customers, which are the same large
12  companies as our client caters to, are Delaware corporations.
13  And with a little sleight of hand in their opening papers as
14  well as their reply papers, they suggest, well, we don't have
15  any customers that have a billing address in Delaware. That
16  the clear implication of that is that they have Delaware
17  corporations that they do business with. As a result, this
18  Court absolutely has a local interest.
19             Moreover, this Court has also noted that when
20  dealing with federal statutes like the Patent Act or the
21  Lanham Act, the interest is national, and that does not
22  necessarily mean that the District Courts here in Delaware
23  don't have a rational or a public interest in adjudicating
24  those cases.
25             With regard to some of the other points that

## Page 20

1   Mr. Jones mentioned, this is not a regional type of business
2   as we have got, the defendant here is located in Missouri
3   and headquartered. It doesn't have a single -- it doesn't
4   have a service area there. As the Court noted, the survey,
5   if any survey was done, it wouldn't be done in Missouri, it
6   would be done in Iowa, probably South Dakota and Minnesota.
7   As a result, the District of Missouri isn't the most
8   convenient at all.
9              Really what this is, is an attempt to try to go
10  to its own home turf on a case that frankly has already been
11  decided with regard to the cornerstone of the likelihood of
12  confusion analysis by the Trademark Trial and Appeal Board.
13  This Court would not be burdened by this type of a case, a
14  Lanham Act case which, generally speaking, isn't as heavily
15  litigated as a patent case. There is not as much motion
16  practice typically, and we have a potential res judicata
17  under *B&B Hardware* under the Supreme Court precedent based
18  on the Trademark Trial and Appeal Board's decision on the
19  likelihood of confusion. This is just an attempt to try
20  to go to their headquarters, not necessarily where the
21  infringing activity occurred.
22             We also do allege that because they're
23  Delaware corporations that Clarity does business with, the
24  infringement has occurred here in Delaware as well as any
25  other place where a company that they have done business

## Page 21

1   with is located or is otherwise incorporated. So the
2   complaint does encompass allegations with regard to all
3   those things.
4              THE COURT: There is no evidence of advertisements
5   or affirmative use of the trademark here in Delaware, correct?
6              MR. TOKE: That is true, Your Honor. But as we
7   noted, there is the ability to use, for Clarity's customers
8   traveling throughout the United States, to be able to access
9   those services from wherever, including Delaware. So it is
10  true that we, at least currently, don't have any, any
11  evidence to suggest that there is advertising in Delaware.
12  We don't know, we obviously haven't conducted discovery, but
13  we do know that Clarity has done business with Delaware
14  corporations. So as a result, there may not be advertising
15  per se, but there certainly is marketing and working to have
16  sales with companies that do have incorporation here in
17  Delaware.
18             THE COURT: But as they point out, in today's
19  world, probably every company has done business with a
20  Delaware corporation. Address that and the larger point
21  that defendants suggest you would be sending a dangerous
22  message if we keep venue in this case.
23             MR. TOKE: This Court's jurisprudence on transfer
24  is legend. There are cases that have been transferred and
25  those that haven't. This decision doesn't send a message that

22

Mr. Jones is suggesting. What it suggests, what message that it will send is that if you choose to incorporate in Delaware and you have done business with other Delaware business corporations and you are a multistate company that does business in multiple states and as a result has a much larger reach than just say the doughnut shop example that Mr. Jones gave, then you are potentially subjecting yourself to federal claims in Delaware. That is not an onerous obligation for companies that have chosen to be incorporated and to be protected under the laws of Delaware.

In addition, I will turn, if I may, to the motion to dismiss, Your Honor.

THE COURT: But before you get to that. On the defendant's preferred forum, which is a factor of course under *Jumara*, under these circumstances, how do you suggest I analyze it? And what do I look to as defendant's preferred forum?

MR. TOKE: Well, defendant's preferred forum should receive very little deference here, Your Honor, because there is not even the nexus under Clarity's own admissions. They admit that the nexus of location of the passing off is where the infringement occurs, and that is not in Missouri. Their service area isn't even in Missouri. So, therefore, under their own argument, Missouri isn't the appropriate location, so it should receive very little

23

deference, if any.

THE COURT: You can move on, if you wish.

MR. TOKE: With regard to the motion to dismiss, this isn't just a regional decision matter. The DTPA does not require that the activities occur within Delaware. However, there are allegations within the complaint. Paragraphs 5, 11, 12, and 13 through 16 or 16 through 18 discuss the allegations that include Delaware activities. But, again, the DTPA doesn't specifically require local activity in order to have an actual claim unlike the DCFA. If anything, those discussions of locality or the localness address the common law and fair competition and trademark claims, not the DTPA claims.

THE COURT: All right. Is there anything else?

MR. TOKE: That's it, Your Honor.

THE COURT: All right. Rebuttal on the motions?

MR. TOKE: Thank you, Your Honor.

MR. JONES: Well, now we have it on the table. Now we know what the test is that the plaintiff is espousing here. If the defendant is a Delaware company and does business with any Delaware companies, and is subject to jurisdiction in multiple venues outside of Delaware, then venue is in Delaware is most appropriate.

That is not the way to apply Section 1404(a), Your Honor, I submit.

24

The passage in the brief that I was trying to recall a few minutes ago, and couldn't remember or see it, was the passage where they say, "there are likely also witnesses in Iowa, Minnesota, and South Dakota."

I assume that those are actual confusion witnesses on whom they intend to rely. I don't know. I don't know who those third-party witnesses are in those three states, but we'll take plaintiff at his word in his brief. There are third-party witnesses in the vicinity of Missouri and the other areas in which this Court could -- to which the Court could transfer this lawsuit.

When you consider the convenience of known third-party witnesses, we don't know their names but we know that plaintiff says they're there. We have to take the plaintiff at his word.

And then, Your Honor, there was a red herring thrown into the plaintiff's argument. I want to make sure the Court understands one aspect of trademark law as it applies to this case. We did apply, our client did apply for a federal -- a national registration of Vast broadband, I think it was, and it was rejected because of the senior registration of plaintiff.

From what the plaintiff's attorney said, you'd think that was dispositive of the likelihood of confusion. No, it is not. Under the longstanding *Don's Donuts* rule

25

which originated in the 30s or 40s, I think, if you are operating in disparate territories, then even though the marks might be the same and might be used for the same or very closely related services, the senior party has no viable cause of action until the circumstances in the marketplace are such that there is a collision of the reputations and the operations of the defendant and the plaintiff.

In this case, when we apply for a national registration, when my client applied, what they were seeking was a national registration and the Trademark Office said you cannot have a national registration which would give you prima facie evidence of the right to use your mark nationwide.

We're not saying we have the right to use it nationwide. We're saying that at this time, under the circumstances of the marketplace, our use in those three states is lawful. So the USPTO's decision on our national application is not dispositive of the likelihood of confusion issue, unless the Court otherwise thinks.

THE COURT: That is very helpful because as I'm sure you know, I don't have nearly the breadth of experience on trademark cases that I do have on patent cases.

MR. JONES: And I don't think you need any more, Your Honor. I'm sure you have plenty to do.

THE COURT: Thank you for that. But it has been

26

1 suggested by your friend on the other side that while this
2 is an intellectual property case, I shouldn't expect, if I
3 were to keep it, that it's going to necessarily be as
4 litigious as a typical patent case may be. Do you want to
5 address that?
6     MR. JONES: Nothing is as burdensome to the
7 participants and the Court as a patent case. I know because
8 I used to try them until I woke up one morning and had
9 better sense. Now I will do nothing in the way of patent
10 cases if I can keep going.
11     No, it's not going to be as complex as a patent
12 case or not as many rabbit trails to go down as in a patent
13 case. The likelihood of confusion is a determinative issue,
14 and that is based on known factors. And there will be
15 evidence garnered by both sides. There will be surveys,
16 expert witnesses, but, yes, you can get your arms around a
17 trademark case more readily than you can get your arms
18 around a trademark case whether you are on the bench or
19 being the advocate for either party. I agree with that.
20     THE COURT: Okay. Is there anything else you
21 want to add?
22     MR. JONES: No, thank you.
23     THE COURT: Is there anything further from
24 plaintiff?
25     MR. TOKE: If the court would like me to address

27

1 the *Don's Donuts* issue, sure, but otherwise ...
2     THE COURT: It's really up to you.
3     MR. TOKE: Just briefly, if I might, Your Honor.
4     THE COURT: Sure.
5     MR. TOKE: With regard to the *Don's Donuts*
6 issue raised by Mr. Jones, all that case determines and that
7 doctrine is about regionality and whether or not someone
8 with a national registration can stop someone from using
9 that mark in a remote geographical area. That doesn't mean
10 there isn't a likelihood of confusion between those two
11 marks. It's just that they haven't collided yet.
12     So the decision there is a likelihood of
13 confusion between the two marks is still quite important;
14 and we would argue that the decision by the TTAB was in fact
15 dispositive as to that issue. So really the issue here will
16 be quite narrow in terms of are these geographically remote
17 or are they actually competitive. And our view, of course,
18 is there has been actual confusion in the marketplace which
19 suggests that they are in fact competitive and that they do
20 overlap even if the actual service areas are geographically
21 disparate. That we do have an overlapping consumer base,
22 including the Delaware corporations, that would suggest that
23 there isn't that *Don's Donuts* problem. But the likelihood
24 of confusion on the decision of the TTAB is still relevant
25 and potentially issue preclusive.

28

1     THE COURT: Thank you.
2     MR. TOKE: Thank you.
3     THE COURT: Mr. Jones, you can have the last
4 word on your motion.
5     MR. JONES: And with that, the issue is joined
6 and I submit the issue should be tried in Missouri or one of
7 those other three states, Your Honor.
8     THE COURT: Okay. Thank you.
9     I know we have a proposed scheduling order, and
10 we might talk about that, but at this point I want to take a
11 break and see if I can give you any further guidance on
12 the issues that have already been argued, so we will be in
13 recess.
14     (Brief recess taken.)
15     *   *   *
16     (Proceedings reconvened after recess.)
17     THE COURT: Have a seat.
18     Thank you for the helpful argument and the
19 briefing before that. As I said, I was focused on the
20 motion to transfer, and having given that thought and worked
21 through it more, I'm prepared to rule on that motion.
22     So with respect to the defendant's motion to
23 transfer, the legal standard is clear. The burden, of
24 course, is on the defendant.
25     In the Third Circuit, we know that transfer is

29

1 not to be liberally granted and, in fact, should only be
2 granted where the balance of convenience of the parties is
3 strongly in favor of defendant.
4     Importantly also, the law requires me to
5 carefully consider each case on its own, applying the law
6 to the particular facts in each case.
7     In that regard, I'm not sure that any single
8 case could ever be said reasonably to be one that should be
9 interpreted as sending a strong message or a broad message.
10 Certainly, I don't intend my ruling today to be sending a
11 broad message of any sort. Instead, I have struggled to
12 apply the law to the unique and particular facts here.
13     First, this much is not hard or in dispute. The
14 parties concede that the Eastern District of Missouri is a
15 proper venue where this case could have been brought. I
16 don't know that it is conceded but I find the other three
17 Districts that have been discussed today, these three where
18 Clarity operates, which I understand to be South Dakota,
19 Iowa, and Minnesota, those are also proper venues in which
20 this case could have been brought.
21     That just means I need to turn to the tougher
22 decision of the *Jumara* factors and seeing how they all play
23 out and what the balance is in the end.
24     First, with respect to the private factors, we
25 start with the plaintiff's preference for Delaware as the

30

1  forum for this case.
2         Obviously, this factor disfavors transfer.  In
3  this case, plaintiff's choice of Delaware was a legitimate
4  and rationale choice given the quandary they faced; and as
5  they have described, they were concerned, understandably,
6  that their home turf of California was not a proper venue,
7  and they could see, from publicly available information,
8  that defendant operated in at least three other Districts
9  and had its headquarter located in a fourth District.  They
10 could, of course, also easily determine that defendant was
11 incorporated in Delaware and could be confident therefore
12 that Delaware was at least a proper forum.
13        I do disagree with plaintiff in saying that
14 therefore their choice under the circumstances is entitled
15 to extreme deference, but I also disagree with defendant
16 saying that under the circumstances, plaintiff's choice is
17 entitled to only little deference.
18        In my view, the amount of deference, the amount
19 of weight is somewhere between those two endpoints and so in
20 my view, the plaintiff's choice of forum of Delaware gets
21 substantial weight in the balance here.
22        An interesting wrinkle I think that was
23 presented by this case is whether or not defendant is a
24 truly regional company.  Some of the cases discuss how much
25 weight the plaintiff's choice of forum would be given in a

31

1  case where they sue a truly regional company that does
2  business only in an area that does not include Delaware.
3         Here, I don't think the facts are in dispute,
4  but the implication in my view is that the defendant is not
5  a "truly regional company" in the sense that I think the
6  cases are talking about, but it is maybe a quasi-regional
7  company.  It is not a company that as far as the record
8  can indicate directs its business at a region that includes
9  Delaware.
10        So what I understand is that as a matter of
11 law, because we're talking about a regulated industry, the
12 defendant is not allowed to market its services to Delaware
13 residents.  Nonetheless, if somebody who is a resident of one
14 of those three states spends time in Delaware, perhaps an
15 unlimited amount of time without being a resident of Delaware
16 at the time they became a customer of the defendant, they can
17 use the defendant's services in Delaware it appears as much as
18 and as long as they want.  It's also true that defendant does
19 business with Delaware corporations, and it's also true that
20 the defendant operates in multiple states, the three where it
21 sells its services plus Missouri where it is located in and
22 its headquarters are.
23        So we're not dealing with the mom-and-pop donut
24 shop in North Carolina.  We're not dealing with what the cases
25 view as a truly regional company, but we're also not dealing

32

1  with a company that really directs its business to Delaware.
2         So all of that to me means that the weight to be
3  given to plaintiff's choice of forum, again, it's substantial
4  but it's reduced somewhat by what the defendant's business
5  operations and character is.  And so we're not down to little
6  deference, but again we're far from extreme deference.
7         I now turn to the defendant's choice of forum.
8         Until today, the defendant's preference was sole
9  the Eastern District of Missouri.  That is what I analyzed
10 coming in here.  And I think it's fair to continue to
11 evaluate Delaware against the Eastern District of Missouri.
12 The other three Districts were where the defendant operates
13 and are now preferred forums, at least preferable to
14 Delaware, would be proper forums, but that is not what was
15 argued for today.
16        So my focus is on the Eastern District of
17 Missouri.  And with respect to that District, the defendant
18 has legitimate and rationale reasons for its preference.
19 That is where they are physically located.  It is clearly a
20 more convenient forum for defendant than Delaware is.  There
21 are many witnesses located there.  And the decisions that
22 form the basis for plaintiff's claims evidently occurred in
23 the Eastern District of Missouri.  So that factor favors
24 transfer.
25        In totality, it does not get the same weight as

33

1  the plaintiff's choice of forum, but it does get significant
2  weight.
3         Next, I turn to whether the claim arose elsewhere.
4         That factor favors transfer.  The claim did not
5  arise in Delaware.  It clearly arose at least in the three
6  Districts where Clarity operates.  It arguably also arose in
7  the Eastern District of Missouri where the decisions leading
8  to the lawsuit were made.
9         Next is the convenience of the parties.
10        This factor, too, favors transfer to the Eastern
11 District of Missouri.  If the case were transferred there,
12 there would be somewhat fewer miles for plaintiff to travel
13 as plaintiff is located in and has offices only in California.
14 Obviously, that is closer to the Eastern District of
15 Missouri than is Delaware.  And it would certainly be more
16 convenient for the defendant which is already located in the
17 Eastern District of Missouri.
18        Given the relative physical and financial
19 conditions of the parties here, I don't believe that this
20 factor, convenience of the parties, should get great weight,
21 but what weight it gets favors transfer.
22        With respect to convenience of the witnesses, to
23 the extent they're unavailable, there is no evidence that any
24 witnesses are unavailable.  I view this factor as neutral
25 under the circumstances of this case.

34

1 Next, location of books and records.
2 This factor slightly favors -- or favors Missouri
3 but I give it very little weight given how I understand the
4 books and records are kept and how they will be produced.
5 Practical considerations.
6 That factor also favors transfer but gets not
7 too much weight here. I do think on the whole, this case
8 will be easier and less expensive and more apt to resolve in
9 the Eastern District of Missouri than here given the
10 defendant is located there and the plaintiff really has no
11 connection to Delaware.
12 Next, local interest.
13 This factor is neutral. Delaware does have an
14 interest in its corporate citizens complying with the law,
15 but the Eastern District of Missouri also has such an
16 interest with respect to companies that operate in and are
17 located in the Eastern District of Missouri.
18 The administrative difficulty factor got some
19 attention in the briefing, none really today.
20 I view it as neutral. Clearly, our court is
21 busy, but I don't view that as a real factor in this case.
22 It's not a patent case. The parties seem to agree that
23 the amount of work for the Court is likely to not be
24 overwhelming, whichever Court has this case. So I don't
25 view the administrative factor as pointing one way or the

35

1 other in this case.
2 The other factors remaining, the remaining
3 *Jumara* factors are neutral.
4 So where does this leave us? This leaves me
5 with a very difficult decision, to be candid.
6 Clearly, there is a preponderance in favor of
7 transfer. I think it is clear there is more than a
8 preponderance of evidence in favor of transfer.
9 It's a tough question, particularly as I have
10 analyzed the factors and have indicated it's not entirely
11 clear, for instance, how much weight to give to the
12 plaintiff's choice of forum.
13 The tough question is, is the balance heavily or
14 strongly in favor of transfer? And that's a tough call.
15 But having given it a great deal of thought
16 and doing the best I can, I ultimately conclude that the
17 defendant has met its burden, and so I am going to grant
18 the motion to transfer and send this case to the Eastern
19 District of Missouri.
20 That means on the motion to dismiss, I am going
21 to deny that as moot or deny it without prejudice. You all
22 can fight about those issues in another court if you wish to
23 do so. And, of course, that means the scheduling disputes
24 that were also on the agenda for today are moot.
25 I'll issue an oral order that simply says

36

1 basically for the reasons stated today, this case is being
2 transferred.
3 Are there any questions or anything further we
4 should talk about, defendant?
5 MR. JONES: No, Your Honor. I do thank you.
6 THE COURT: All right. And plaintiff?
7 MR. TOKE: No, Your Honor.
8 THE COURT: Okay. Thank you all very much. We
9 will be in recess.
10 (Hearing ends at 1:28 p.m.)
11
12 I hereby certify the foregoing is a true and accurate
transcript from my stenographic notes in the proceeding.
13

14 /s/ Brian P. Gaffigan
Official Court Reporter
15 U.S. District Court

| / | activity [7] - 7:13, 7:15, 11:9, 11:25, 12:1, 20:21, 23:10 | analyzed [3] - 11:25, 32:9, 35:10 | B | 35:17 |
|---|---|---|---|---|
| /s [1] - 36:14 | actual [4] - 23:10, 24:5, 27:18, 27:20 | AND [1] - 1:2 | | burdened [1] - 20:13 |
| | | and-a-half [1] - 7:25 | B&B [1] - 20:17 | burdensome [1] - 26:6 |
| **1** | add [1] - 26:21 | anti [1] - 8:4 | bags [1] - 12:5 | business [19] - 4:16, 4:17, 4:22, 12:13, 19:17, 20:1, 20:23, 20:25, 21:13, 21:19, 22:3, 22:5, 23:21, 31:2, 31:8, 31:19, 32:1, 32:4 |
| | addition [1] - 22:11 | anti-convenient [1] - 8:4 | balance [4] - 29:2, 29:23, 30:21, 35:13 | |
| 1-100 [1] - 1:7 | address [6] - 16:21, 19:15, 21:20, 23:12, 26:5, 26:25 | apologize [1] - 14:14 | base [1] - 27:21 | |
| 11 [1] - 23:7 | | Appeal [2] - 20:12, 20:18 | based [3] - 11:15, 20:17, 26:14 | |
| 12 [1] - 23:7 | adjudicating [2] - 19:4, 19:23 | appearances [1] - 2:19 | bases [1] - 18:10 | |
| 12:08 [1] - 2:17 | administrative [2] - 34:18, 34:25 | APPEARANCES [2] - 1:14, 2:1 | basis [6] - 7:23, 17:9, 17:10, 17:12, 18:6, 32:22 | businesses [1] - 16:15 |
| 13 [2] - 11:2, 23:7 | | | | busy [1] - 34:21 |
| 1404(a [1] - 23:24 | | application [2] - 6:10, 25:18 | bears [1] - 16:22 | buy [2] - 11:20, 11:21 |
| 16 [2] - 23:7 | admission [1] - 19:1 | applied [1] - 25:10 | became [1] - 31:16 | BY [4] - 1:16, 1:19, 2:3, 2:6 |
| 17-417-LPS [1] - 1:8 | admissions [1] - 22:21 | applies [1] - 24:19 | become [1] - 13:1 | |
| 18 [1] - 23:7 | admit [1] - 22:21 | apply [6] - 16:12, 23:24, 24:19, 25:9, 29:12 | BEFORE [1] - 1:13 | |
| 1:28 [1] - 36:10 | adopted [1] - 15:15 | | begin [1] - 6:4 | **C** |
| | advancements [1] - 18:22 | applying [1] - 29:5 | beginning [1] - 2:17 | |
| **2** | advertised [1] - 5:25 | appropriate [3] - 7:1, 22:25, 23:23 | behalf [2] - 2:7, 2:23 | cable [2] - 4:25, 5:18 |
| | advertisements [1] - 21:4 | | bench [1] - 26:18 | California [7] - 1:4, 1:20, 7:20, 12:15, 17:16, 30:6, 33:13 |
| 2 [1] - 1:11 | | apt [1] - 34:8 | Berkeley [1] - 1:20 | |
| 2017 [1] - 1:11 | advertising [3] - 5:11, 21:11, 21:14 | area [14] - 7:4, 8:22, 8:25, 9:10, 10:25, 12:16, 17:21, 18:5, 18:9, 20:4, 22:23, 27:9, 31:2 | best [2] - 17:15, 35:16 | |
| | advocate [1] - 26:19 | | better [1] - 26:9 | candid [1] - 35:5 |
| **3** | affect [1] - 19:5 | | between [7] - 4:18, 5:12, 11:17, 18:4, 27:10, 27:13, 30:19 | cannot [2] - 5:9, 25:12 |
| | affecting [1] - 16:11 | | | car [1] - 12:5 |
| 30s [1] - 25:1 | affects [1] - 16:15 | areas [7] - 11:19, 14:17, 15:13, 17:23, 18:4, 24:10, 27:20 | big [1] - 6:17 | career [1] - 4:11 |
| | afternoon [7] - 2:18, 2:20, 2:21, 3:1, 3:10, 3:11, 16:20 | | billing [1] - 19:15 | carefully [1] - 29:5 |
| **4** | | | BIRD [1] - 2:5 | Carolina [4] - 2:6, 11:22, 12:1, 31:24 |
| | | arguably [1] - 33:6 | Bird [1] - 3:13 | |
| 40s [1] - 25:1 | agenda [1] - 35:24 | argue [3] - 3:17, 4:4, 27:14 | birth [1] - 15:14 | case [44] - 6:3, 9:15, 13:23, 14:1, 14:5, 14:9, 15:4, 16:1, 16:2, 18:3, 18:9, 20:10, 20:13, 20:14, 20:15, 21:22, 24:19, 25:9, 26:2, 26:4, 26:7, 26:12, 26:13, 26:17, 26:18, 27:6, 29:5, 29:6, 29:8, 29:15, 29:20, 30:1, 30:3, 30:23, 31:1, 33:11, 33:25, 34:7, 34:21, 34:22, 34:24, 35:1, 35:18, 36:1 |
| | ago [2] - 14:21, 24:2 | | Board [1] - 20:12 | |
| **5** | agree [2] - 26:19, 34:22 | argued [2] - 28:12, 32:15 | Board's [1] - 20:18 | |
| | agreements [1] - 5:2 | arguing [2] - 3:24, 14:3 | books [2] - 34:1, 34:4 | |
| 5 [1] - 23:7 | air [1] - 7:25 | | bought [1] - 11:21 | |
| | Airlines [1] - 10:2 | Argument [1] - 1:11 | brand [1] - 14:21 | |
| **A** | allegations [3] - 21:2, 23:6, 23:8 | argument [4] - 12:23, 22:24, 24:17, 28:18 | branding [1] - 11:15 | |
| | | | breadth [1] - 25:21 | |
| ability [1] - 21:7 | allege [1] - 20:22 | arise [3] - 9:16, 11:3, 33:5 | break [2] - 9:22, 28:11 | |
| able [1] - 21:8 | alleged [2] - 19:6, 19:10 | arms [2] - 26:16, 26:17 | breakfast [1] - 11:23 | |
| absolutely [1] - 19:18 | | arose [9] - 8:22, 9:15, 14:2, 14:9, 15:10, 15:14, 33:3, 33:5, 33:6 | Brian [2] - 1:25, 36:14 | |
| access [5] - 5:5, 5:17, 5:21, 12:8, 21:8 | allegedly [4] - 3:20, 9:5, 11:4, 11:13 | | Brief [1] - 28:14 | |
| | allow [1] - 4:3 | | brief [7] - 8:21, 8:23, 9:19, 10:24, 11:2, 24:1, 24:9 | cases [14] - 3:23, 8:7, 8:8, 8:11, 17:4, 18:8, 19:24, 21:24, 25:22, 26:10, 30:24, 31:6, 31:24 |
| accurate [1] - 36:12 | allowed [3] - 16:6, 18:2, 31:12 | | | |
| accurately [1] - 3:15 | allows [1] - 18:2 | aspect [1] - 24:18 | briefing [2] - 28:19, 34:19 | |
| acknowledged [1] - 13:20 | ALSTON [1] - 2:5 | assume [1] - 24:5 | briefly [1] - 27:3 | caters [1] - 19:12 |
| | Alston [1] - 3:12 | ate [1] - 11:23 | broad [2] - 29:9, 29:11 | causes [1] - 13:7 |
| Act [4] - 19:5, 19:20, 19:21, 20:14 | American [1] - 10:2 | attempt [2] - 20:9, 20:19 | BROADBAND [1] - 1:7 | certainly [4] - 4:6, 21:15, 29:10, 33:15 |
| ACTION [1] - 1:4 | amount [5] - 6:25, 30:18, 31:15, 34:23 | attention [1] - 34:19 | Broadband [1] - 2:8 | |
| action [4] - 13:5, 13:7, 14:9, 25:5 | | attorney [1] - 24:23 | broadband [2] - 5:3, 24:20 | certify [1] - 36:12 |
| activities [16] - 3:20, 4:16, 4:18, 4:19, 5:12, 8:19, 8:22, 9:6, 11:10, 13:12, 15:2, 15:15, 16:10, 23:5, 23:8 | analysis [7] - 12:10, 12:18, 12:19, 12:20, 13:21, 13:24, 20:12 | available [2] - 18:19, 30:7 | brought [5] - 5:22, 14:5, 14:8, 29:15, 29:20 | character [1] - 32:5 |
| | | | | Charlotte [1] - 2:6 |
| | analyze [2] - 13:25, 22:16 | | burden [10] - 10:12, 13:22, 16:23, 16:25, 18:20, 18:24, 28:23, | Chief [1] - 1:13 |
| | | | | choice [16] - 7:17, 12:20, 14:20, 15:18, |

17:9, 17:15, 30:3, 30:4, 30:14, 30:16, 30:20, 30:25, 32:3, 32:7, 33:1, 35:12
**choose** [2] - 18:3, 22:2
**chooses** [1] - 12:16
**chose** [7] - 6:23, 12:22, 12:25, 13:25, 14:22, 17:19
**chosen** [2] - 17:6, 22:9
**Circuit** [4] - 10:13, 16:24, 18:7, 28:25
**circumstances** [7] - 4:11, 22:15, 25:5, 25:16, 30:14, 30:16, 33:25
**citizens** [1] - 34:14
**CIVIL** [1] - 1:4
**claim** [8] - 8:20, 9:15, 14:8, 15:9, 15:14, 23:10, 33:3, 33:4
**claims** [11] - 8:22, 11:2, 16:7, 16:8, 16:11, 19:5, 22:8, 23:13, 32:22
**CLARITY** [1] - 1:6
**Clarity** [13] - 2:8, 3:13, 8:22, 8:25, 9:9, 16:25, 18:12, 18:18, 18:24, 20:23, 21:13, 29:18, 33:6
**Clarity 's** [3] - 18:25, 21:7, 22:20
**clear** [7] - 5:14, 12:7, 17:17, 19:16, 28:23, 35:7, 35:11
**clearly** [4] - 32:19, 33:5, 34:20, 35:6
**client** [11] - 4:20, 4:25, 7:2, 11:7, 12:22, 13:21, 14:6, 16:12, 19:12, 24:19, 25:10
**client 's** [5] - 5:6, 5:7, 5:11, 5:12, 19:7
**close** [1] - 11:10
**closely** [1] - 25:4
**closer** [1] - 33:14
**Coast** [1] - 12:15
**Cobalt** [1] - 2:24
**COBALT** [1] - 1:19
**code** [1] - 5:8
**collided** [1] - 27:11
**collision** [1] - 25:6
**combination** [1] - 5:1
**coming** [1] - 32:10
**common** [1] - 23:12
**companies** [5] - 19:12, 21:16, 22:9, 23:21, 34:16

**Company** [2] - 1:4, 1:7
**company** [29] - 4:14, 4:15, 5:13, 6:4, 6:6, 6:8, 6:21, 6:22, 7:2, 10:18, 11:15, 12:14, 12:15, 14:19, 14:20, 15:19, 20:25, 21:19, 22:4, 23:20, 30:24, 31:1, 31:5, 31:7, 31:25, 32:1
**competition** [1] - 23:12
**competitive** [2] - 27:17, 27:19
**complaint** [3] - 19:6, 21:2, 23:6
**complex** [1] - 26:11
**complying** [1] - 34:14
**concede** [1] - 29:14
**conceded** [1] - 29:16
**concerned** [1] - 30:5
**conclude** [2] - 7:23, 35:16
**conclusion** [2] - 7:11, 15:3
**conditions** [1] - 33:19
**conducted** [3] - 11:11, 13:12, 21:12
**conducting** [2] - 9:6, 9:7
**confident** [2] - 9:8, 30:11
**confused** [2] - 9:10, 11:5
**confusion** [14] - 8:24, 9:3, 9:15, 16:3, 20:12, 20:19, 24:5, 24:24, 25:18, 26:13, 27:10, 27:13, 27:18, 27:24
**connected** [1] - 14:24
**connection** [1] - 34:11
**consequence** [2] - 12:6, 12:7
**consider** [6] - 8:18, 9:8, 15:1, 24:12, 29:5
**considerations** [1] - 34:5
**considered** [1] - 15:10
**consumer** [2] - 16:12, 27:21
**consumers** [3] - 16:3, 16:5, 16:11
**continue** [1] - 32:10
**continued** [1] - 2:1
**controlled** [1] - 13:8
**convenience** [13] - 6:13, 7:7, 7:12, 7:18, 13:14, 13:24, 18:15, 18:16, 24:12, 29:2,

33:9, 33:20, 33:22
**convenient** [10] - 7:15, 8:4, 10:10, 10:15, 10:22, 12:10, 15:4, 20:8, 32:20, 33:16
**core** [1] - 14:19
**cornerstone** [1] - 20:11
**corporate** [1] - 34:14
**corporation** [4] - 13:11, 13:16, 14:7, 21:20
**corporations** [11] - 13:4, 19:6, 19:8, 19:9, 19:12, 19:17, 20:23, 21:14, 22:4, 27:22, 31:19
**correct** [2] - 4:23, 21:5
**Counsel** [1] - 2:7
**counsel** [3] - 1:21, 2:23, 9:2
**count** [1] - 9:18
**country** [6] - 6:8, 7:13, 7:14, 12:4, 12:9, 13:5
**course** [8] - 4:7, 9:12, 16:21, 22:14, 27:17, 28:24, 30:10, 35:23
**COURT** [43] - 1:1, 2:18, 2:21, 3:2, 3:8, 3:10, 3:14, 3:24, 4:3, 4:21, 5:14, 7:19, 7:23, 8:5, 8:15, 9:12, 9:22, 9:24, 10:3, 10:10, 12:22, 13:18, 14:10, 15:8, 16:17, 21:4, 21:18, 22:13, 23:2, 23:14, 23:16, 25:20, 25:25, 26:20, 26:23, 27:2, 27:4, 28:1, 28:3, 28:8, 28:17, 36:6, 36:8
**court** [4] - 2:17, 26:25, 34:20, 35:22
**Court** [26] - 9:2, 10:19, 10:21, 13:3, 13:23, 15:7, 16:2, 16:4, 16:22, 16:24, 17:14, 18:15, 19:18, 19:19, 20:4, 20:13, 20:17, 24:10, 24:11, 24:18, 25:19, 26:7, 34:23, 34:24, 36:14, 36:15
**Court 's** [1] - 21:23
**courthouse** [1] - 13:9
**Courts** [1] - 19:22
**courts** [5] - 6:9, 6:15, 6:21, 12:6, 19:4
**customer** [2] - 5:19, 31:16
**customers** [14] - 4:22,

5:3, 5:15, 7:4, 9:4, 9:5, 11:4, 16:3, 19:7, 19:8, 19:11, 19:15, 21:7
**CVIN** [1] - 1:3

**D**

**d/b/a** [3] - 1:3, 1:6, 2:8
**Dakota** [10] - 5:4, 5:16, 10:21, 14:6, 14:25, 15:2, 16:13, 20:6, 24:4, 29:18
**dangerous** [1] - 21:21
**DCFA** [1] - 23:10
**deal** [1] - 35:15
**dealing** [4] - 19:20, 31:23, 31:24, 31:25
**deals** [2] - 3:19, 15:25
**decided** [1] - 20:11
**decision** [17] - 6:13, 7:6, 11:13, 14:2, 17:2, 17:7, 18:2, 18:11, 20:18, 21:25, 23:4, 25:17, 27:12, 27:14, 27:24, 29:22, 35:5
**decisions** [2] - 32:21, 33:7
**deem** [1] - 6:13
**deemed** [1] - 11:3
**defend** [1] - 12:14
**defendant** [29] - 4:14, 8:14, 12:13, 13:15, 16:22, 17:11, 17:19, 18:5, 20:2, 23:20, 25:7, 28:24, 29:3, 30:8, 30:10, 30:15, 30:23, 31:4, 31:12, 31:16, 31:18, 31:20, 32:12, 32:17, 32:20, 33:16, 34:10, 35:17, 36:4
**Defendant** [1] - 2:7
**defendant 's** [12] - 3:15, 12:3, 14:11, 19:11, 22:14, 22:16, 22:18, 28:22, 31:17, 32:4, 32:7, 32:8
**Defendants** [1] - 1:8
**defendants** [3] - 3:5, 4:4, 21:21
**deference** [16] - 6:24, 6:25, 8:3, 15:19, 17:2, 17:7, 18:11, 18:12, 22:19, 23:1, 30:15, 30:17, 30:18, 32:6
**definitely** [1] - 15:17
**definitively** [1] - 6:12
**DELAWARE** [1] - 1:2

**Delaware** [91] - 1:7, 1:10, 4:14, 4:15, 4:16, 4:18, 4:20, 4:22, 4:23, 5:10, 5:13, 5:16, 5:20, 6:4, 6:6, 6:7, 6:21, 6:22, 7:2, 7:4, 8:6, 8:12, 8:14, 9:8, 10:15, 11:19, 11:23, 11:24, 12:16, 12:22, 13:4, 13:5, 13:11, 13:16, 15:5, 15:19, 16:6, 16:11, 16:15, 17:3, 17:12, 18:10, 19:4, 19:5, 19:9, 19:12, 19:15, 19:16, 19:22, 20:23, 20:24, 21:5, 21:9, 21:11, 21:13, 21:17, 21:20, 22:2, 22:3, 22:8, 22:10, 23:5, 23:8, 23:20, 23:21, 23:22, 23:23, 27:22, 29:25, 30:3, 30:11, 30:12, 30:20, 31:2, 31:9, 31:12, 31:14, 31:15, 31:17, 31:19, 32:1, 32:11, 32:14, 32:20, 33:5, 33:15, 34:11, 34:13
**deny** [3] - 14:2, 35:21
**described** [1] - 30:5
**determinative** [1] - 26:13
**determine** [1] - 30:10
**determines** [1] - 27:6
**determining** [1] - 13:15
**developed** [1] - 18:9
**device** [1] - 5:17
**DEVLIN** [1] - 2:3
**Devlin** [1] - 3:12
**difference** [1] - 7:24
**difficult** [2] - 18:23, 35:5
**difficulty** [1] - 34:18
**directed** [1] - 9:4
**direction** [1] - 14:20
**directs** [2] - 31:8, 32:1
**disagree** [2] - 30:13, 30:15
**discovery** [2] - 18:17, 21:12
**discretion** [3] - 6:2, 7:5, 10:20
**discuss** [2] - 23:8, 30:24
**discussed** [1] - 29:17
**discussion** [2] - 14:11, 17:14
**discussions** [1] - 23:11

**disfavors** [1] - 30:2
**dismiss** [7] - 3:19, 3:23, 4:7, 16:8, 22:12, 23:3, 35:20
**disparate** [3] - 17:22, 25:2, 27:21
**dispositive** [5] - 13:17, 13:19, 24:24, 25:18, 27:15
**dispute** [4] - 8:11, 10:12, 29:13, 31:3
**disputes** [1] - 35:23
**distance** [1] - 10:8
**DISTRICT** [2] - 1:1, 1:2
**District** [38] - 9:13, 10:8, 10:16, 10:20, 11:12, 11:15, 14:1, 14:12, 14:15, 17:3, 17:5, 17:19, 17:23, 17:25, 18:1, 18:3, 18:7, 18:8, 18:10, 19:3, 19:22, 20:7, 29:14, 30:9, 32:9, 32:11, 32:16, 32:17, 32:23, 33:7, 33:11, 33:14, 33:17, 34:9, 34:15, 34:17, 35:19, 36:15
**Districts** [6] - 17:21, 18:4, 29:17, 30:8, 32:12, 33:6
**doctrine** [1] - 27:7
**document** [1] - 11:13
**documents** [2] - 18:21, 18:22
**DOES** [1] - 1:7
**Don's** [4] - 24:25, 27:1, 27:5, 27:23
**done** [7] - 20:5, 20:6, 20:25, 21:13, 21:19, 22:3
**donut** [1] - 31:23
**Donuts** [4] - 24:25, 27:1, 27:5, 27:23
**doors** [1] - 13:9
**doubt** [1] - 15:13
**doughnut** [2] - 11:22, 22:6
**doughnuts** [2] - 11:21, 12:2
**down** [4] - 7:21, 11:21, 26:12, 32:5
**DTPA** [3] - 23:4, 23:9, 23:13
**due** [1] - 6:5

**E**

**easier** [1] - 34:8
**easiest** [1] - 17:25
**easily** [1] - 30:10

**Eastern** [20] - 9:13, 10:8, 11:12, 11:15, 14:12, 14:15, 18:8, 29:14, 32:9, 32:11, 32:16, 32:23, 33:7, 33:10, 33:14, 33:17, 34:9, 34:15, 34:17, 35:18
**eight** [1] - 17:10
**either** [4] - 9:13, 14:16, 14:25, 26:19
**elsewhere** [1] - 33:3
**encompass** [1] - 21:2
**end** [1] - 29:23
**endpoints** [1] - 30:19
**ends** [1] - 36:10
**entire** [1] - 7:13
**entirely** [2] - 15:8, 35:10
**entitled** [3] - 17:7, 30:14, 30:17
**entity** [2] - 12:23, 13:1
**espousing** [1] - 23:19
**ESQ** [5] - 1:16, 1:17, 1:19, 2:3, 2:6
**essentially** [1] - 7:19
**evaluate** [1] - 32:11
**event** [1] - 18:17
**evidence** [6] - 21:4, 21:11, 25:13, 26:15, 33:23, 35:8
**evidently** [1] - 32:22
**eviscerating** [1] - 13:13
**exactly** [1] - 17:15
**example** [1] - 22:6
**exception** [2] - 17:8
**excuse** [2] - 4:15, 14:7
**exercise** [3] - 6:2, 7:5, 10:19
**expect** [1] - 26:2
**expensive** [1] - 34:8
**experience** [1] - 25:21
**expert** [1] - 26:16
**explain** [1] - 9:25
**exposed** [1] - 9:10
**extent** [2] - 8:4, 33:23
**extreme** [3] - 18:11, 30:15, 32:6
**eyes** [1] - 10:4

**F**

**face** [1] - 10:11
**faced** [1] - 30:4
**facie** [1] - 25:13
**fact** [11] - 4:20, 5:13, 6:4, 7:9, 12:3, 13:23, 17:11, 17:16, 27:14, 27:19, 29:1

**factor** [22] - 8:2, 13:15, 14:10, 15:1, 15:11, 15:17, 15:21, 15:22, 15:25, 22:14, 30:2, 32:23, 33:4, 33:10, 33:20, 33:24, 34:2, 34:6, 34:13, 34:18, 34:21, 34:25
**factors** [15] - 6:15, 6:18, 8:18, 10:15, 15:6, 18:13, 18:14, 18:25, 19:1, 26:14, 29:22, 29:24, 35:2, 35:3, 35:10
**facts** [6] - 7:10, 11:18, 14:25, 29:6, 29:12, 31:3
**factual** [1] - 11:17
**failed** [1] - 16:25
**fair** [2] - 23:12, 32:10
**fall** [1] - 18:4
**familiar** [1] - 6:16
**far** [3] - 7:16, 31:7, 32:6
**FARNAN** [5] - 1:16, 2:20, 2:22, 3:3, 4:1
**Farnan** [2] - 2:22, 3:14
**favor** [7] - 15:12, 15:18, 19:2, 29:3, 35:6, 35:8, 35:14
**favored** [1] - 7:8
**favors** [7] - 32:23, 33:4, 33:10, 33:21, 34:2, 34:6
**federal** [4] - 19:5, 19:20, 22:7, 24:20
**few** [1] - 24:2
**fewer** [1] - 33:12
**fight** [1] - 35:22
**filed** [1] - 13:11
**filing** [1] - 17:12
**financial** [1] - 33:18
**Finger** [1] - 2:23
**FINGER** [1] - 1:16
**Firm** [1] - 3:12
**FIRM** [1] - 2:3
**first** [7] - 6:17, 16:21, 17:1, 17:11, 18:14, 29:13, 29:24
**focus** [1] - 32:16
**focused** [3] - 4:5, 14:13, 28:19
**folks** [1] - 11:11
**follow** [1] - 8:10
**following** [1] - 2:16
**FOR** [1] - 1:2
**fora** [1] - 15:25
**foregoing** [1] - 36:12
**form** [1] - 32:22
**forum** [13] - 8:6, 22:14, 22:17, 22:18,

30:1, 30:12, 30:20, 30:25, 32:3, 32:7, 32:20, 33:1, 35:12
**forums** [2] - 32:13, 32:14
**fourth** [2] - 17:22, 30:9
**franchise** [1] - 5:2
**frankly** [1] - 20:10
**Fresno** [1] - 12:15
**friend** [1] - 26:1

**G**

**gadzillion** [1] - 13:4
**Gaffigan** [2] - 1:25, 36:14
**garnered** [1] - 26:15
**general** [4] - 6:6, 6:10, 6:11, 13:8
**generally** [1] - 20:14
**geographic** [2] - 10:7, 11:19
**geographical** [1] - 27:9
**geographically** [2] - 27:16, 27:20
**given** [12] - 6:15, 6:24, 15:14, 15:19, 28:20, 30:4, 30:25, 32:3, 33:18, 34:3, 34:9, 35:15
**grant** [1] - 35:17
**granted** [2] - 29:1, 29:2
**great** [2] - 33:20, 35:15
**ground** [1] - 11:11
**guess** [3] - 7:20, 8:10, 10:11
**guidance** [1] - 28:11

**H**

**half** [1] - 7:25
**halfway** [1] - 7:14
**hand** [1] - 19:13
**handle** [1] - 4:2
**hard** [2] - 12:23, 29:13
**Hardware** [1] - 20:17
**headquarter** [1] - 30:9
**headquartered** [2] - 18:6, 20:3
**headquarters** [3] - 17:21, 20:20, 31:22
**hear** [3] - 10:3, 10:11, 16:19
**hearing** [2] - 2:16, 36:10
**Hearing** [1] - 1:11
**heart** [1] - 11:6

**heavily** [5] - 8:2, 15:11, 15:17, 20:14, 35:13
**heavy** [3] - 10:12, 13:22, 16:23
**held** [1] - 2:17
**helpful** [2] - 25:20, 28:18
**hereby** [1] - 36:12
**herring** [1] - 24:16
**home** [4] - 17:6, 17:16, 20:10, 30:6
**Honor** [22] - 2:20, 3:4, 3:11, 4:1, 4:10, 4:24, 12:6, 13:2, 14:4, 16:20, 21:6, 22:12, 22:19, 23:15, 23:17, 23:25, 24:16, 25:24, 27:3, 28:7, 36:5, 36:7
**Honor's** [1] - 3:6
**HONORABLE** [1] - 1:13
**hour** [2] - 7:25

**I**

**idea** [1] - 15:14
**identified** [1] - 18:18
**ill** [2] - 11:24
**illegitimate** [1] - 8:15
**implication** [3] - 19:10, 19:16, 31:4
**important** [1] - 27:13
**importantly** [1] - 29:4
**IN** [2] - 1:1, 1:2
**include** [2] - 23:8, 31:2
**includes** [1] - 31:8
**including** [2] - 21:9, 27:22
**inconvenience** [1] - 8:3
**incorporate** [1] - 22:2
**incorporated** [4] - 17:12, 21:1, 22:9, 30:11
**incorporation** [2] - 18:1, 21:16
**incorrect** [1] - 4:24
**indicate** [2] - 17:5, 31:8
**indicated** [3] - 17:17, 17:20, 35:10
**individual** [2] - 3:24, 14:16
**industry** [1] - 31:11
**inform** [2] - 7:6, 7:10
**information** [1] - 30:7
**infringement** [6] -

8:19, 11:2, 16:2, 16:9, 20:24, 22:22
**infringing** [5] - 3:20, 9:5, 11:4, 11:13, 20:21
**input** [1] - 5:7
**instance** [1] - 35:11
**instead** [1] - 29:11
**intellectual** [1] - 26:2
**intend** [3] - 13:19, 24:6, 29:10
**interest** [18] - 6:14, 6:17, 7:7, 12:11, 12:12, 12:24, 13:14, 13:24, 15:24, 15:25, 16:5, 19:4, 19:18, 19:21, 19:23, 34:12, 34:14, 34:16
**interesting** [2] - 10:14, 30:22
**Internet** [4] - 4:25, 5:3, 5:18, 12:8
**interpreted** [1] - 29:9
**Iowa** [10] - 5:4, 10:21, 14:6, 14:25, 15:2, 16:13, 18:23, 20:6, 24:4, 29:19
**IP** [1] - 18:8
**iPad** [1] - 5:23
**iPads** [1] - 12:5
**iPhone** [1] - 5:23
**iPhones** [1] - 12:5
**irrational** [2] - 8:15, 8:17
**issue** [13] - 9:3, 13:17, 17:1, 25:19, 26:13, 27:1, 27:6, 27:15, 27:25, 28:5, 28:6, 35:25
**issues** [2] - 28:12, 35:22
**itself** [2] - 6:20, 6:22

**J**

**JAMES** [1] - 2:3
**Jim** [1] - 3:11
**joined** [2] - 2:23, 28:5
**joint** [1] - 18:13
**JONES** [24] - 2:6, 3:17, 4:9, 4:24, 5:21, 7:22, 8:1, 8:13, 8:16, 9:17, 9:23, 10:1, 10:4, 10:19, 13:2, 14:4, 14:14, 15:9, 23:18, 25:23, 26:6, 26:22, 28:5, 36:5
**Jones** [8] - 3:12, 17:15, 17:20, 20:1, 22:1, 22:6, 27:6, 28:3

**Judge** [1] - 1:13
**judicata** [1] - 20:16
**Jumara** [6] - 13:21, 14:10, 15:6, 22:15, 29:22, 35:3
**jurisdiction** [3] - 14:5, 17:18, 23:22
**jurisprudence** [1] - 21:23
**justice** [6] - 6:14, 7:7, 12:11, 12:13, 12:24, 13:14
**justify** [1] - 12:20

**K**

**keep** [3] - 21:22, 26:3, 26:10
**Kelly** [1] - 2:22
**KELLY** [1] - 1:16
**kept** [1] - 34:4
**known** [2] - 24:12, 26:14
**knows** [1] - 9:2

**L**

**Lanham** [3] - 19:5, 19:21, 20:14
**large** [2] - 19:8, 19:11
**larger** [3] - 10:11, 21:20, 22:5
**Larry** [1] - 3:12
**LARRY** [1] - 2:6
**last** [1] - 28:3
**law** [14] - 5:1, 10:12, 12:21, 13:20, 13:23, 18:1, 18:9, 23:12, 24:18, 29:4, 29:5, 29:12, 31:11, 34:14
**Law** [1] - 3:12
**LAW** [1] - 2:3
**lawful** [1] - 25:17
**lawfully** [1] - 16:6
**laws** [2] - 5:2, 22:10
**lawsuit** [14] - 4:19, 6:19, 7:6, 7:8, 7:11, 7:13, 8:19, 10:20, 11:6, 11:18, 12:14, 13:10, 24:11, 33:8
**lawsuits** [1] - 9:1
**Layton** [1] - 2:22
**LAYTON** [1] - 1:16
**leading** [1] - 33:7
**least** [10] - 3:20, 4:11, 12:19, 13:19, 14:11, 21:10, 30:8, 30:12, 32:13, 33:5
**leave** [1] - 35:4
**leaves** [1] - 35:4

**left** [2] - 11:22, 17:23
**legal** [2] - 12:1, 28:23
**legend** [1] - 21:24
**legitimate** [5] - 8:8, 8:12, 12:12, 30:3, 32:18
**Lennon** [1] - 3:12
**LENNON** [3] - 2:3, 3:9, 3:11
**LEONARD** [1] - 1:13
**less** [2] - 15:23, 34:8
**lessened** [1] - 17:7
**Liability** [2] - 1:4, 1:7
**liberally** [1] - 29:1
**likelihood** [9] - 9:3, 20:11, 20:19, 24:24, 25:18, 26:13, 27:10, 27:12, 27:23
**likely** [3] - 9:10, 24:3, 34:23
**limit** [1] - 4:7
**limitations** [1] - 6:9
**Limited** [2] - 1:4, 1:7
**limited** [2] - 5:1
**list** [1] - 6:15
**litigated** [1] - 20:15
**litigious** [1] - 26:4
**live** [1] - 5:8
**LLC** [6] - 1:3, 1:6, 2:3, 3:13, 4:20, 13:16
**LLCs** [1] - 13:4
**LLP** [3] - 1:16, 1:19, 2:5
**local** [7] - 5:2, 11:21, 18:17, 19:7, 19:18, 23:9, 34:12
**locality** [1] - 23:11
**localized** [1] - 12:13
**localness** [1] - 23:11
**located** [12] - 10:17, 18:22, 20:2, 21:1, 30:9, 31:21, 32:19, 32:21, 33:13, 33:16, 34:10, 34:17
**location** [5] - 14:19, 14:20, 22:21, 22:25, 34:1
**logical** [1] - 17:25
**longstanding** [1] - 24:25
**look** [3] - 6:11, 18:16, 22:16
**Louis** [1] - 7:20

**M**

**managed** [4] - 11:11, 14:17, 15:16, 16:14
**mark** [3] - 11:13, 25:13, 27:9

**market** [1] - 31:12
**marketing** [1] - 21:15
**marketplace** [3] - 25:6, 25:16, 27:18
**marks** [3] - 25:3, 27:11, 27:13
**material** [1] - 7:24
**matter** [3] - 3:18, 23:4, 31:10
**mean** [2] - 19:22, 27:9
**means** [4] - 29:21, 32:2, 35:20, 35:23
**meet** [1] - 16:25
**mentioned** [3] - 8:23, 16:9, 20:1
**Merit** [1] - 1:25
**message** [6] - 21:22, 21:25, 22:1, 29:9, 29:11
**met** [3] - 18:20, 18:24, 35:17
**Midwest** [2] - 10:7, 15:12
**might** [5] - 7:3, 25:3, 27:3, 28:10
**migrate** [2] - 7:3, 12:3
**miles** [1] - 33:12
**minimal** [1] - 6:25
**Minnesota** [9] - 5:4, 10:21, 14:6, 14:25, 15:2, 16:13, 20:6, 24:4, 29:19
**minutes** [1] - 24:2
**Missouri** [44] - 9:13, 10:9, 11:9, 11:12, 11:14, 11:16, 11:18, 14:13, 14:15, 14:17, 14:18, 14:22, 14:23, 15:5, 15:12, 16:4, 16:14, 18:8, 18:23, 20:2, 20:5, 20:7, 22:23, 22:24, 24:10, 28:6, 29:14, 31:21, 32:9, 32:11, 32:17, 32:23, 33:7, 33:11, 33:15, 33:17, 34:2, 34:9, 34:15, 34:17, 35:19
**mom** [1] - 31:23
**mom-and-pop** [1] - 31:23
**Monday** [1] - 1:11
**moot** [2] - 35:21, 35:24
**moreover** [2] - 18:7, 19:19
**morning** [4] - 9:21, 10:4, 11:24, 26:8
**most** [5] - 10:1, 17:25, 19:1, 20:7, 23:23
**mostly** [1] - 4:5

**motion** [21] - 3:5, 3:18, 3:19, 3:22, 3:23, 4:5, 4:6, 4:12, 14:2, 16:7, 16:21, 16:23, 20:15, 22:12, 23:3, 28:4, 28:20, 28:21, 28:22, 35:18, 35:20
**motions** [4] - 3:17, 3:25, 4:2, 23:16
**move** [2] - 3:6, 23:2
**MR** [38] - 3:1, 3:9, 3:11, 3:17, 4:9, 4:24, 5:21, 7:22, 8:1, 8:13, 8:16, 9:17, 9:23, 10:1, 10:4, 10:19, 13:2, 14:4, 14:14, 15:9, 16:20, 21:6, 21:23, 22:18, 23:3, 23:15, 23:17, 23:18, 25:23, 26:6, 26:22, 26:25, 27:3, 27:5, 28:2, 28:5, 36:5, 36:7
**MS** [4] - 2:20, 2:22, 3:3, 4:1
**multiple** [3] - 22:5, 23:22, 31:20
**multistate** [1] - 22:4

**N**

**names** [1] - 24:13
**narrow** [1] - 27:16
**national** [8] - 19:8, 19:21, 24:20, 25:9, 25:11, 25:12, 25:17, 27:8
**nationwide** [2] - 25:13, 25:15
**near** [1] - 16:4
**nearby** [3] - 10:20, 11:10, 11:18
**nearly** [1] - 25:21
**necessarily** [4] - 13:18, 19:22, 20:20, 26:3
**need** [5] - 8:1, 9:22, 9:24, 25:23, 29:21
**NETWORKS** [1] - 1:3
**neutral** [6] - 15:23, 19:1, 33:24, 34:13, 34:20, 35:3
**never** [1] - 5:24
**next** [4] - 33:3, 33:9, 34:1, 34:12
**nexus** [6] - 6:3, 11:17, 11:19, 14:15, 22:20, 22:21
**Nicole** [1] - 2:24
**NICOLE** [1] - 1:17

night [1] - 10:1
NO [1] - 1:8
none [1] - 34:19
nonetheless [1] - 31:13
North [4] - 2:6, 11:22, 12:1, 31:24
NOTE [1] - 2:16
noted [5] - 16:22, 18:15, 19:19, 20:4, 21:7
notes [1] - 36:12
nothing [2] - 26:6, 26:9
number [2] - 19:6, 19:11

**O**

obligation [1] - 22:8
obviously [3] - 21:12, 30:2, 33:14
occasion [1] - 5:16
occur [2] - 14:18, 23:5
occurred [7] - 3:21, 8:24, 12:1, 20:21, 20:24, 32:22
occurs [2] - 11:3, 22:22
October [1] - 1:11
OF [1] - 1:2
offer [1] - 11:7
Office [1] - 25:11
office [3] - 2:25, 5:5, 14:18
officers [1] - 11:14
offices [1] - 33:13
Official [1] - 36:14
once [1] - 18:24
one [16] - 3:4, 5:15, 7:12, 7:14, 10:13, 11:10, 14:1, 14:9, 15:13, 18:3, 24:18, 26:8, 28:6, 29:8, 31:13, 34:25
onerous [1] - 22:8
oOo [1] - 2:14
open [1] - 2:17
opening [1] - 19:13
operate [1] - 34:16
opera ted [1] - 30:8
operates [6] - 10:18, 12:15, 29:18, 31:20, 32:12, 33:6
operating [1] - 25:2
operations [6] - 4:16, 4:17, 14:17, 16:13, 25:7, 32:5
operative [3] - 11:18, 14:25, 16:10

opinion [1] - 7:9
opposition [1] - 17:17
oral [1] - 35:25
Oral [1] - 1:11
order [4] - 5:7, 23:10, 28:9, 35:25
originated [1] - 25:1
ostensibly [1] - 16:2
otherwise [3] - 21:1, 25:19, 27:1
outcome [1] - 16:1
outside [2] - 12:12, 23:22
overlap [2] - 3:18, 27:20
overlapping [1] - 27:21
overwhelming [1] - 34:24
own [10] - 6:18, 8:21, 8:23, 10:24, 13:6, 19:1, 20:10, 22:20, 22:24, 29:5

**P**

p.m [2] - 2:17, 36:10
page [1] - 11:2
papers [3] - 17:17, 19:13, 19:14
paragraphs [1] - 23:7
part [2] - 3:20, 14:17
participants [1] - 26:7
particular [7] - 7:10, 12:6, 12:7, 15:6, 16:5, 29:6, 29:12
particularly [1] - 35:9
parties [15] - 4:19, 6:14, 7:8, 7:12, 7:18, 10:23, 13:14, 18:15, 18:16, 29:2, 29:14, 33:9, 33:19, 33:20, 34:22
parts [1] - 5:4
party [9] - 7:12, 7:14, 9:17, 12:10, 24:7, 24:9, 24:13, 25:4, 26:19
passage [2] - 24:1, 24:3
passing [2] - 11:3, 22:22
patent [9] - 13:7, 20:15, 25:22, 26:4, 26:7, 26:9, 26:11, 26:12, 34:22
Patent [1] - 19:20
PEDI [1] - 1:17
Pedi [1] - 2:24
people [5] - 9:7, 9:9,

12:4, 14:18, 15:5
per [1] - 21:15
perhaps [1] - 31:14
permissible [1] - 8:16
permits [1] - 13:20
personal [1] - 17:18
persuaded [1] - 12:23
Philadelphia [1] - 7:21
physical [1] - 33:18
physically [2] - 10:17, 32:19
place [2] - 18:3, 20:25
plaintiff [25] - 2:23, 4:13, 4:17, 6:16, 6:20, 6:22, 7:9, 8:11, 8:21, 9:18, 10:24, 16:19, 17:5, 23:19, 24:8, 24:14, 24:15, 24:22, 25:8, 26:24, 30:13, 33:12, 33:13, 34:10, 36:6
Plaintiff [2] - 1:5, 1:21
plaintiff 's [19] - 3:25, 6:23, 8:23, 9:1, 11:1, 15:18, 17:1, 17:2, 24:17, 24:23, 29:25, 30:3, 30:16, 30:20, 30:25, 32:3, 32:22, 33:1, 35:12
plaintiffs [1] - 6:18
play [2] - 12:9, 29:22
plenty [1] - 25:24
plus [1] - 31:21
point [8] - 10:11, 10:15, 10:16, 11:1, 11:20, 21:18, 21:20, 28:10
pointing [1] - 34:25
points [4] - 6:17, 15:20, 15:21, 19:25
policy [1] - 19:3
pop [1] - 31:23
posit [1] - 7:10
potential [2] - 9:4, 20:16
potentially [2] - 22:7, 27:25
practical [1] - 34:5
practice [1] - 20:16
precedent [1] - 20:17
preclusive [1] - 27:25
prefer [2] - 3:5, 3:22
preferable [1] - 32:13
preference [12] - 3:4, 3:6, 3:15, 6:18, 6:24, 8:6, 14:1, 14:11, 14:12, 29:25, 32:8, 32:18
preferred [4] - 22:14, 22:17, 22:18, 32:13
preferring [1] - 8:12

prejudice [1] - 35:21
prepared [1] - 28:21
preponderance [2] - 35:6, 35:8
presented [1] - 30:23
presents [2] - 4:10, 4:12
pretty [1] - 7:21
prima [1] - 25:13
private [3] - 6:17, 18:14, 29:24
probative [1] - 9:9
problem [2] - 6:2, 27:23
proceed [1] - 3:16
proceeding [2] - 3:3, 36:12
Proceedings [1] - 28:16
produce [1] - 18:23
produced [1] - 34:4
product [1] - 12:3
products [2] - 7:3, 11:4
promoted [1] - 6:1
promoting [1] - 7:17
promotion [1] - 5:11
proper [5] - 29:15, 29:19, 30:6, 30:12, 32:14
property [1] - 26:2
proposed [1] - 28:9
protect [1] - 16:4
protected [1] - 22:10
protecting [2] - 16:3, 16:5
protection [1] - 16:12
proves [1] - 7:5
provide [2] - 5:9, 11:8
provider [1] - 5:1
provision [1] - 5:11
public [4] - 15:24, 18:25, 19:3, 19:23
publicly [1] - 30:7
put [3] - 2:18, 6:9, 12:4

**Q**

quandary [2] - 17:23, 30:4
quasi [1] - 31:6
quasi -regional [1] - 31:6
questions [1] - 36:3
quite [3] - 10:14, 27:13, 27:16

**R**

rabbit [1] - 26:12
raised [1] - 27:6
rather [2] - 3:17, 4:10
rational [11] - 8:8, 8:12, 10:22, 12:10, 17:9, 17:10, 17:12, 18:2, 18:6, 18:10, 19:23
rationale [2] - 30:4, 32:18
reach [1] - 22:6
readily [1] - 26:17
real [2] - 7:24, 34:21
really [6] - 20:9, 27:2, 27:15, 32:1, 34:10, 34:19
reason [8] - 8:13, 12:16, 12:17, 12:18, 12:19, 12:25, 13:11, 16:9
reasonably [2] - 14:3, 29:8
reasons [4] - 8:9, 8:12, 32:18, 36:1
rebuttal [2] - 16:18, 23:16
receive [3] - 18:11, 22:19, 22:25
recess [4] - 28:13, 28:14, 28:16, 36:9
recognize [1] - 8:6
reconvened [1] - 28:16
record [2] - 2:19, 31:7
records [2] - 34:1, 34:4
red [1] - 24:16
reduced [1] - 32:4
regard [9] - 18:21, 18:25, 19:3, 19:25, 20:11, 21:2, 23:3, 27:5, 29:7
region [1] - 31:8
regional [7] - 20:1, 23:4, 30:24, 31:1, 31:5, 31:6, 31:25
regionality [1] - 27:7
Registered [1] - 1:25
registration [6] - 24:20, 24:22, 25:10, 25:11, 25:12, 27:8
regulated [1] - 31:11
rejected [1] - 24:21
related [1] - 25:4
relative [1] - 33:18
relevance [1] - 9:14
relevant [2] - 15:3, 27:24

**rely** [1] - 24:6
**remaining** [2] - 35:2
**remember** [1] - 24:2
**remote** [2] - 27:9, 27:16
**remotely** [1] - 16:14
**repeatedly** [2] - 16:24, 18:15
**reply** [1] - 19:14
**Reporter** [2] - 1:25, 36:14
**REPORTER 'S** [1] - 2:16
**represent** [1] - 3:15
**representing** [1] - 3:13
**reputations** [1] - 25:7
**require** [2] - 23:5, 23:9
**requires** [2] - 13:23, 29:4
**res** [1] - 20:16
**residence** [2] - 8:14, 10:7
**resident** [3] - 5:22, 31:13, 31:15
**residents** [3] - 5:10, 16:15, 31:13
**resolve** [1] - 34:8
**respect** [7] - 6:5, 16:7, 28:22, 29:24, 32:17, 33:22, 34:16
**respective** [1] - 15:25
**rest** [1] - 6:7
**result** [5] - 18:11, 19:17, 20:7, 21:14, 22:5
**retain** [3] - 6:3, 7:5, 13:10
**retaining** [2] - 7:8, 7:11
**Richards** [1] - 2:22
**RICHARDS** [1] - 1:16
**rise** [3] - 4:19, 8:19, 16:10
**rule** [2] - 24:25, 28:21
**ruled** [1] - 16:24
**ruling** [2] - 13:9, 29:10

## S

**sales** [1] - 21:16
**save** [1] - 16:17
**scheduling** [2] - 28:9, 35:23
**score** [2] - 6:17, 15:20
**scoring** [1] - 15:20
**se** [1] - 21:15
**seat** [1] - 28:17
**secondarily** [1] - 8:11
**secondly** [1] - 18:21

**Section** [1] - 23:24
**see** [4] - 5:6, 24:2, 28:11, 30:7
**seeing** [1] - 29:22
**seeking** [1] - 25:10
**seem** [1] - 34:22
**sees** [1] - 18:7
**selection** [1] - 8:9
**sell** [2] - 11:7
**selling** [1] - 7:3
**sells** [1] - 31:21
**send** [3] - 21:25, 22:2, 35:18
**sending** [3] - 21:21, 29:9, 29:10
**senior** [2] - 24:21, 25:4
**sense** [2] - 26:9, 31:5
**separate** [2] - 17:21, 17:22
**service** [11] - 7:4, 8:22, 8:25, 9:10, 10:25, 17:20, 18:4, 18:5, 20:4, 22:23, 27:20
**services** [15] - 5:3, 5:7, 5:9, 5:12, 5:23, 5:24, 5:25, 7:3, 11:8, 11:14, 21:9, 25:4, 31:12, 31:17, 31:21
**servicing** [1] - 5:2
**set** [1] - 4:10
**several** [1] - 18:4
**shop** [3] - 11:22, 22:6, 31:24
**short** [1] - 10:8
**side** [2] - 3:25, 26:1
**sides** [1] - 26:15
**sight** [1] - 11:9
**significant** [4] - 8:9, 15:10, 15:21, 33:1
**significantly** [1] - 14:24
**Sikeston** [2] - 11:12, 11:14
**simply** [1] - 35:25
**single** [4] - 4:18, 18:18, 20:3, 29:7
**situation** [1] - 4:13
**sleight** [1] - 19:13
**slightly** [1] - 34:2
**small** [1] - 8:4
**sold** [1] - 11:4
**sole** [1] - 32:8
**someone** [2] - 27:7, 27:8
**somewhat** [2] - 32:4, 33:12
**somewhere** [1] - 30:19
**sorry** [3] - 5:9, 9:20,

10:3
**sort** [2] - 5:17, 29:11
**sound** [1] - 16:8
**South** [10] - 5:4, 5:16, 10:21, 14:6, 14:25, 15:1, 16:13, 20:6, 24:4, 29:18
**speaking** [1] - 20:14
**special** [1] - 13:6
**specific** [1] - 13:24
**specifically** [1] - 23:9
**spends** [1] - 31:14
**spent** [1] - 10:1
**spun** [1] - 14:3
**St** [1] - 7:20
**stable** [1] - 18:9
**standard** [3] - 4:25, 13:13, 28:23
**standards** [1] - 12:1
**STARK** [1] - 1:13
**start** [3] - 4:8, 18:14, 29:25
**state** [6] - 5:2, 6:23, 8:14, 12:25, 17:22, 18:1
**States** [1] - 21:8
**states** [9] - 8:23, 11:10, 14:19, 22:5, 24:8, 25:17, 28:7, 31:14, 31:20
**STATES** [1] - 1:1
**status** [1] - 7:2
**statute** [9] - 6:6, 6:10, 6:11, 13:6, 13:7, 13:8, 14:7, 14:8, 16:12
**statutes** [1] - 19:20
**statutory** [1] - 16:7
**stenographic** [1] - 36:12
**still** [3] - 8:9, 27:13, 27:24
**stop** [1] - 27:8
**strong** [3] - 11:17, 14:15, 29:9
**strongly** [2] - 29:3, 35:14
**struggled** [1] - 29:11
**subject** [4] - 3:18, 5:10, 12:13, 23:21
**subjected** [2] - 9:5, 11:25
**subjecting** [1] - 22:7
**submit** [5] - 12:12, 13:2, 16:1, 23:25, 28:6
**substantial** [2] - 30:21, 32:3
**sue** [7] - 12:16, 12:21, 13:21, 17:2, 17:6, 18:2, 31:1

**sued** [3] - 6:6, 12:24, 13:4
**sufficiently** [1] - 14:24
**suggest** [5] - 19:14, 21:11, 21:21, 22:15, 27:22
**suggested** [1] - 26:1
**suggesting** [1] - 22:1
**suggests** [3] - 18:12, 22:1, 27:19
**suing** [3] - 4:14, 18:6, 18:10
**suit** [1] - 10:2
**support** [2] - 7:10, 15:3
**suppose** [1] - 7:25
**supposed** [1] - 15:20
**Supreme** [1] - 20:17
**survey** [6] - 9:3, 9:4, 9:7, 10:6, 20:4, 20:5
**surveys** [1] - 26:15

## T

**table** [2] - 2:24, 23:18
**targeted** [1] - 10:6
**technological** [1] - 18:22
**Telecom** [2] - 2:8, 3:13
**TELECOM** [1] - 1:6
**telephone** [2] - 4:25, 10:2
**terms** [2] - 3:3, 27:16
**territories** [2] - 5:22, 25:2
**territory** [1] - 10:7
**test** [1] - 23:19
**THE** [44] - 1:1, 1:2, 2:18, 2:21, 3:2, 3:8, 3:10, 3:14, 3:24, 4:3, 4:21, 5:14, 7:19, 7:23, 8:5, 8:15, 9:12, 9:22, 9:24, 10:3, 10:10, 12:22, 13:18, 14:10, 15:8, 16:17, 21:4, 21:18, 22:13, 23:2, 23:14, 23:16, 25:20, 25:25, 26:20, 26:23, 27:2, 27:4, 28:1, 28:3, 28:8, 28:17, 36:6, 36:8
**themselves** [1] - 18:13
**therefore** [4] - 17:19, 22:24, 30:11, 30:14
**thinking** [1] - 12:19
**thinks** [2] - 10:21, 25:19
**third** [5] - 9:17, 12:10, 24:7, 24:9, 24:13
**Third** [3] - 10:13, 16:24, 28:25

**third -party** [5] - 9:17, 12:10, 24:7, 24:9, 24:13
**thread** [2] - 4:18, 5:12
**three** [15] - 8:23, 14:16, 14:18, 14:21, 17:21, 24:8, 25:16, 28:7, 29:16, 29:17, 30:8, 31:14, 31:20, 32:12, 33:5
**throughout** [1] - 21:8
**thrown** [1] - 24:17
**tired** [1] - 10:4
**today** [9] - 3:4, 18:22, 29:10, 29:17, 32:8, 32:15, 34:19, 35:24, 36:1
**today 's** [1] - 21:18
**together** [1] - 3:6
**TOKE** [14] - 1:19, 3:1, 16:20, 21:6, 21:23, 22:18, 23:3, 23:15, 23:17, 26:25, 27:3, 27:5, 28:2, 36:7
**Toke** [2] - 2:24, 4:1
**totality** [1] - 32:25
**tough** [3] - 35:9, 35:13, 35:14
**tougher** [1] - 29:21
**towards** [1] - 10:16
**trademark** [11] - 9:1, 9:11, 11:2, 16:2, 16:8, 21:5, 23:12, 24:18, 25:22, 26:17, 26:18
**Trademark** [3] - 20:12, 20:18, 25:11
**trails** [1] - 26:12
**transcript** [1] - 36:12
**transfer** [27] - 3:19, 3:22, 4:5, 4:13, 9:14, 10:20, 14:4, 14:9, 15:12, 16:21, 16:23, 19:2, 21:23, 24:11, 28:20, 28:23, 28:25, 30:2, 32:24, 33:4, 33:10, 33:21, 34:6, 35:7, 35:8, 35:14, 35:18
**transferred** [4] - 14:23, 21:24, 33:11, 36:2
**travel** [6] - 5:16, 7:12, 7:14, 7:15, 18:19, 33:12
**traveling** [3] - 5:24, 7:20, 21:8
**trial** [4] - 7:15, 18:18, 18:19, 18:24
**Trial** [2] - 20:12, 20:18
**tried** [1] - 28:6

| | | |
|---|---|---|
| **triggers** [1] - 13:21<br>**trouble** [1] - 10:5<br>**troubles** [1] - 9:20<br>**true** [8] - 5:20, 5:21, 17:4, 21:6, 21:10, 31:18, 31:19, 36:12<br>**truly** [4] - 30:24, 31:1, 31:5, 31:25<br>**try** [4] - 5:7, 20:9, 20:19, 26:8<br>**trying** [4] - 6:16, 9:1, 10:2, 24:1<br>**TTAB** [2] - 27:14, 27:24<br>**turf** [4] - 17:6, 17:16, 20:10, 30:6<br>**turn** [5] - 17:1, 22:11, 29:21, 32:7, 33:3<br>**turning** [1] - 18:13<br>**TV** [1] - 5:18<br>**twice** [1] - 7:15<br>**two** [3] - 27:10, 27:13, 30:19<br>**type** [2] - 20:1, 20:13<br>**typical** [1] - 26:4<br>**typically** [1] - 20:16 | **V**<br><br>**Vast** [4] - 2:8, 9:11, 11:7, 24:20<br>**VAST** [2] - 1:3, 1:6<br>**venue** [20] - 6:3, 6:6, 6:7, 6:10, 6:11, 6:18, 6:23, 7:6, 7:17, 12:14, 13:6, 13:7, 13:8, 14:7, 15:4, 17:16, 21:22, 23:23, 29:15, 30:6<br>**venues** [2] - 23:22, 29:19<br>**versus** [1] - 18:3<br>**vet** [1] - 9:3<br>**viable** [1] - 25:5<br>**vicinity** [1] - 24:9<br>**view** [9] - 27:17, 30:18, 30:20, 31:4, 31:25, 33:24, 34:20, 34:21, 34:25<br>**VIJAY** [1] - 1:19<br>**Vijay** [1] - 2:24<br>**vision** [1] - 9:20 | **Y**<br><br>**years** [1] - 14:21<br>**yesterday** [1] - 11:22<br>**yourself** [1] - 22:7<br><br>**Z**<br><br>**zip** [1] - 5:8 |
| **U**<br><br>**U.S** [1] - 36:15<br>**ultimately** [1] - 35:16<br>**unavailable** [2] - 33:23, 33:24<br>**under** [15] - 6:6, 13:21, 13:23, 20:17, 22:10, 22:15, 22:20, 22:24, 24:25, 25:15, 30:14, 30:16, 33:25<br>**underscores** [1] - 17:15<br>**understandably** [1] - 30:5<br>**undertake** [1] - 14:21<br>**undoubtedly** [2] - 15:11, 15:22<br>**unique** [3] - 4:10, 10:14, 29:12<br>**UNITED** [1] - 1:1<br>**United** [1] - 21:8<br>**unless** [1] - 25:19<br>**unlike** [1] - 23:10<br>**unlimited** [1] - 31:15<br>**up** [6] - 4:7, 11:23, 14:11, 15:8, 26:8, 27:2<br>**uses** [1] - 11:7<br>**USPTO 's** [1] - 25:17<br>**utilize** [1] - 5:23 | **W**<br><br>**watch** [1] - 5:18<br>**website** [2] - 5:6, 12:8<br>**weigh** [1] - 8:1<br>**weighs** [3] - 15:11, 15:17, 15:22<br>**weight** [13] - 8:5, 8:10, 30:19, 30:21, 30:25, 32:2, 32:25, 33:2, 33:20, 33:21, 34:3, 34:7, 35:11<br>**Welcome** [1] - 3:2<br>**welcoming** [1] - 13:10<br>**West** [1] - 12:15<br>**whereas** [1] - 15:18<br>**whichever** [1] - 34:24<br>**whole** [1] - 34:7<br>**Wilmington** [1] - 1:10<br>**wish** [3] - 4:4, 23:2, 35:22<br>**witness** [1] - 18:18<br>**witnesses** [15] - 6:14, 9:17, 10:23, 10:24, 12:11, 18:17, 24:4, 24:6, 24:7, 24:9, 24:13, 26:16, 32:21, 33:22, 33:24<br>**woke** [1] - 26:8<br>**word** [3] - 24:8, 24:15, 28:4<br>**world** [3] - 12:9, 13:3, 21:19<br>**wrinkle** [1] - 30:22 | |