# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CITRIX SYSTEMS, INC.,

      Plaintiff,

      v.

PARALLEL NETWORKS LICENSING, LLC,

      Defendant.

Civil Action No. 19-2005-LPS

**JURY TRIAL DEMANDED**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER

## TABLE OF CONTENTS

**Page(s)**

I.    NATURE AND STAGE OF THE PROCEEDING..............................................................1

II.   SUMMARY OF THE ARGUMENT ...........................................................................1

III.  LEGAL STANDARD...................................................................................................3

    A.   Motion to Dismiss Under Rule 12(b)(1) ................................................................3

    B.   Declaratory Judgment Subject Matter Jurisdiction................................................3

    C.   Transfer Under 28 U.S.C. § 1404(a) ......................................................................4

IV.   ARGUMENT ...............................................................................................................5

    A.   Citrix Has Demonstrated An Actual Controversy Exists .......................................5

        i.    Parallel Networks' Infringement Allegations in the Texas Cases Establish Declaratory Judgment Jurisdiction ............................................5

        ii.   Parallel Networks' Litigation History Supports Declaratory Judgment Jurisdiction...........................................................................10

    B.   Transfer Under 28 U.S.C. § 1404 Is Improper ....................................................11

        i.    The Private Interest Factors Weigh Against Transfer...............................12

        ii.   The Public Interest Factors Weigh Against Transfer................................16

        iii.  The Customer-Suit Exception to the First-to-File Rule Requires This Action Be Heard in This District. ..............................................17

    C.   Justice Requires That Citrix Be Given Leave to Amend To Address Any Pleading Deficiencies Found by The Court .......................................................20

V.    CONCLUSION...........................................................................................................20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraxis Bioscience, LLC v. HBT Labs, Inc.*,
  C.A. No. 18-2019-RGA, 2019 WL 2270440 (D. Del. May 28, 2019) .................................13

*ADE Corp. v. KLA-Tencor Corp.*,
  138 F. Supp. 2d 565 (D. Del. 2001)........................................................................16

*Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.*,
  133 F. Supp. 2d 354 (D. Del. 2001)...................................................................19, 20

*Arris Grp., Inc. v. British Telecomms. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011)..............................................................................9

*Arrowhead Indus. Water, Inc. v. Ecolochem*, 846 F.2d 731 (Fed. Cir. 1988) ............................11

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000).................................................................................3

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009).........................................................................4, 5

*Intel Corp. v. Future Link Sys., LLC*,
  C.A. No. 14-377-LPS, 2015 WL 649294 (D. Del. Feb. 12, 2015) ............................3, 4, 6, 20

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
  797 F. Supp. 2d 472 (D. Del. 2011)..................................................................13, 17

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)......................................................................... *passim*

*Kahn v. General Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)........................................................................18, 20

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)........................................................................18, 20

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017)........................................................................15

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ......................................4, 10

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)...................................................................... *passim*

*Microsoft Corp. v. GeoTag*,
    847 F. Supp. 2d 675 (D. Del. 2012)............................................................................19, 20

*Microsoft Corp. v. GeoTag, Inc.*,
    C.A. No. 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014)...................................6, 7

*In re Mobile Telecomms. Techs., LLC*,
    247 F. Supp. 3d 456 (D. Del. 2017) ........................................................................ *passim*

*In re Nintendo*,
    756 F.3d 1363 (Fed. Cir. 2014)..........................................................................18, 19, 20

*Oracle Corp. v. epicRealm Licensing, LP*,
    C.A. No. 6-414-SLR, D.I. 21 (D. Del. Mar. 26, 2007). (Ex. 7)............................................16

*In re Parallel Networks, LLC ('111) Patent Litig.*,
    MDL No. 2355 (J.P.M.L. 2012), D.I. 140 (Ex. 1) ..........................................................12, 14

*Parallel Networks, LLC v. Citrix Systems Inc.*,
    C.A. No. 13-cv-1414 (D. Del.) ............................................................................10, 13

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008)..........................................................................4, 5, 11

*Quinstreet Inc. v. Parallel Networks, LLC*,
    C.A. No. 6-495-SLR (D. Del. Nov 3, 2009) ......................................................................16

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003)....................................................................18, 19, 20

*Round Rock Research, LLC v. Dell, Inc.*,
    904 F. Supp. 2d 374 (D. Del. 2012) ..............................................................................17

*Safenet, Inc. v. Uniloc USA, Inc.*,
    C.A. No. 6:15-CV-97-RWS-KNM, 2015 WL 7272196 (E.D. Tex. Nov. 17,
    2015) ...............................................................................................................9, 10

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970).........................................................................................4, 12

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011)..........................................................................18, 19, 20

**Statutes**

28 U.S.C. § 1404............................................................................................................12

28 U.S.C. § 1404(a) ........................................................................................................4

EAST\171483443.3

**Other Authorities**

Rule 12(b)(1).............................................................................................................................3

Rule 12(b)(6).............................................................................................................................3

EAST\171483443.3

Plaintiff Citrix Systems, Inc. ("Citrix") submits this response in opposition to Defendant Parallel Networks Licensing, LLC's ("Parallel Networks") Motion to Dismiss or, in the Alternative, Transfer.  (D.I. 9-10, the "Motion").

## I.      NATURE AND STAGE OF THE PROCEEDING

On July 3 and July 12, 2019, Parallel Networks filed suits in the Eastern District of Texas (collectively, the "Texas Cases") against Citrix's customers RamQuest Software Inc. ("RamQuest") and Superior Turnkey Solutions Group, Inc. ("STSG"; collectively, "the Citrix Customers").  Parallel Networks alleges that the Citrix Customers infringe the '554 Patent and the '335 Patent (collectively, "the Asserted Patents") based on the Citrix Customers' use of Citrix's products (the "Accused Products").

Citrix filed a declaratory judgment action in this district on October 23, 2019. (D.I. 1, the "Complaint" or "Compl.").  In the Complaint, Citrix explained that there is a real, cognizable threat that Parallel Networks will accuse Citrix of infringement as well, especially because Parallel Networks' infringement allegations in the Texas Cases are premised exclusively on the use of the Accused Products by Citrix Customers and because the only evidence Parallel Networks cites in support of these allegations are Citrix product manuals.

## II.     SUMMARY OF THE ARGUMENT

Citrix's Complaint includes detailed and specific assertions regarding the bases for Citrix's apprehension of a potential patent infringement lawsuit.  Citrix has properly pled that Parallel Networks' allegations in the Texas Cases are tantamount to accusations that Citrix infringed the Asserted Patents.  When a patentee, like Parallel Networks, sues a supplier's customers for patent infringement based on the customers' use of the supplier's product there is an implicit allegation of infringement by the patentee against the supplier and, accordingly, a

1

justiciable controversy between the patentee and the supplier.  For that reason, this Court has subject matter jurisdiction to hear Citrix's declaratory judgment lawsuit.

In its Motion, Parallel Networks argues this Court cannot exercise jurisdiction unless Citrix either has a binding obligation to indemnify the Citrix Customers or is liable for indirect infringement of the Asserted Patents.  But this Court has squarely rejected Parallel Networks' "narrow interpretation" of the case law because "indemnification obligations or theories of indirect infringement are not prerequisites for establishing subject matter jurisdiction…." *In re Mobile Telecomms. Techs., LLC*, 247 F. Supp. 3d 456, 461 (D. Del. 2017).  Instead, Citrix must only show a "reasonable potential" that Parallel Networks will accuse Citrix of infringement.

There is a "reasonable potential" Parallel Networks will accuse Citrix of infringement not only in light of the Texas Cases, but also because of Parallel Networks' prior litigation conduct. The predecessor-in interest to Parallel Networks and the Asserted Patents sued Citrix previously in this Court for patent infringement and Parallel Networks has also filed several lawsuits in addition to the Texas Cases alleging infringement of the Asserted Patents.  The Texas Cases coupled with Parallel Networks' past conduct makes it eminently reasonable for Citrix to believe Parallel Networks will sue Citrix for infringement of the Asserted Patents.

Parallel Networks' alternative request to transfer this case to the Eastern District of Texas should be rejected.  For one, Parallel Networks is a Delaware limited liability company.  What is more, Parallel Networks previously filed several lawsuits in this District, including the prior suit brought by its predecessor against Citrix.  Because the *Jumara* factors weigh against transfer and the customer-suit exception to the first-to-file rule applies, this Court should decide that venue is appropriate in this District.

## III.     LEGAL STANDARD

### A.     Motion to Dismiss Under Rule 12(b)(1)

"Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact)." *Intel Corp. v. Future Link Sys., LLC*, C.A. No. 14-377-LPS, 2015 WL 649294, at *3 (D. Del. Feb. 12, 2015).  When reviewing a facial attack, courts "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). "[T]he standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion."  *Gould Elecs.*, 220 F.3d at 178.

Parallel Networks' Motion appears to be a facial attack on Citrix's Complaint because it disputes the legal sufficiency of the allegations in the Complaint.  *See, e.g.,* Motion at 5 ("Citrix bases its standing exclusively on the notion that Parallel Networks brought allegations of direct infringement against the Citrix Customers using evidentiary citations to Citrix materials."); *id.* at 6 ("Citrix's complaint fails to allege an indemnity relationship . . .).  Indeed, Parallel Networks does not challenge the accuracy of Citrix's allegations.  Accordingly, the Court must accept Citrix's allegations as true and consider them in the light most favorable to Citrix.  *See, e.g., Gould Elecs.*, 220 F.3d at 176-77; *Mobile Telecomms.*, 247 F. Supp. 3d at 459.

### B.     Declaratory Judgment Subject Matter Jurisdiction

"The threshold question for declaratory judgment jurisdiction is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014) (internal quotations omitted) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

3

(2007)).  There must be a "real and immediate injury or threat of future injury" for an actual

controversy to exist.  *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir.

2008); *see also Mobile Telecomms.*, 247 F. Supp. 3d at 460.  This is an objective standard where

"the objective words and actions of the patentee . . . are controlling."  *Hewlett-Packard Co. v.*

*Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

In patent cases, an "affirmative act by the patentee" is indicative of an actual controversy

between the parties.  *Intel*, 2015 WL 649294, at *4.  "When the conduct of the patentee can be

reasonably inferred as demonstrating intent to enforce a patent against the declaratory judgment

plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated only

implicitly."  *Mobile Telecomms.*, 247 F. Supp. 3d at 460 (internal quotations omitted) (citing

*Hewlett-Packard*, 587 F.3d at 1363); *see also DataTern*, 755 F.3d at 906 ("[A] patentee's

aggressive enforcement strategy, even in the absence of direct threats against the declaratory

plaintiff, may also support jurisdiction.").  This is a fact specific inquiry and all relevant

circumstances must be considered.  *Intel*, 2015 WL 649294, at *4.

## C.    Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  Parallel Networks, as movant, bears the burden "to establish that a

balancing of proper interests weigh[s] in favor of the transfer."  *Shutte v. Armco Steel Corp.*, 431

F.2d 22, 25 (3d Cir. 1970).  "[U]nless the balance of convenience of the parties is strongly in

favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.*  In the Third Circuit,

district courts weigh the so-called *Jumara* factors, a non-exhaustive set of public interest and

private interest factors.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

4

## IV.    ARGUMENT

### A.    Citrix Has Demonstrated An Actual Controversy Exists

This Court should exercise subject matter jurisdiction because Citrix has adequately pled that there is a substantial controversy between Citrix and Parallel Networks, parties with adverse legal interests.  Citrix has alleged that (a) Parallel Networks accused Citrix's products of directly infringing the Asserted Patents in the Texas Cases, and (b) there is a reasonable potential that Parallel Networks could also accuse Citrix of infringement of the Asserted Patents.  Parallel Networks' litigation history also evidences a strong likelihood that Parallel Networks will accuse Citrix of infringement.  Citrix has established that declaratory judgment jurisdiction exists in view of the totality of the circumstances.  *See DataTern*, 755 F.3d at 905 (finding declaratory judgment jurisdiction existed where defendant accused plaintiff's customers of direct infringement based on their use of plaintiff's software).

### i.    Parallel Networks' Infringement Allegations in the Texas Cases Establish Declaratory Judgment Jurisdiction.

Citrix has a reasonable apprehension of the potential threat that Parallel Networks will attempt to enforce its patents directly against Citrix.  Parallel Networks' infringement allegations in the Texas Cases against the Citrix Customers are premised exclusively upon the customers' use of Citrix's NetScaler and ADC products.  Compl., ¶¶ 33-34, 39 ("In sum, Parallel Networks Licensing alleges that RamQuest and Superior Turnkey directly infringe the Asserted Patents by using Citrix's Accused Products.").  In support of these infringement allegations, Parallel Networks relies extensively upon Citrix product manuals.  *See* Compl., ¶¶ 35-38, 41.

Declaratory judgment jurisdiction exists when an affirmative act by the patentee leads the declaratory plaintiff to reasonably infer that the patentee will enforce its patent against the declaratory plaintiff.  *See Hewlett-Packard*, 587 F.3d at 1364; *Prasco*, 537 F.3d at 1339; *Mobile*

5

*Telecomms.*, 247 F. Supp. 3d at 461-62 ("A declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer.").  Where, as here, the patentee has made "repeated references identifying DJ Plaintiffs' products as infringing," this Court has found a "'substantial controversy' about whether those products infringe the patents-in-suit." *Mobile Telecomms.*, 247 F. Supp. 3d at 461; *see also Intel*, 2015 WL 649294, at *7-8 (finding reasonable inference of actual controversy based on "repeated, explicit focus" of declaratory plaintiff's technology).

Citrix's Complaint outlines how Parallel Networks' affirmative acts give rise to an actual controversy between Parallel Networks and Citrix.  *Mobile Telecomms.*, 247 F. Supp. 3d at 460-62 (finding jurisdiction where patentee filed cases in Texas alleging that declaratory plaintiff's customers infringed patentee's patents); s*ee also Microsoft Corp. v. GeoTag, Inc.*, C.A. No. 11-175-RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014) (finding "reasonable potential" that patentee could have asserted claim of direct infringement against declaratory plaintiffs "based on the same underlying circumstances in the customer suits").

The *Mobile Telecommunications* and *GeoTag* cases decided by this Court demonstrate why Parallel Networks' allegations in the Texas Cases create a substantial controversy between Parallel Networks and Citrix.  In *Mobile Telecommunications*, the patentee sued a supplier's customers in the Eastern District of Texas.  *Mobile Telecomms.*, 247 F. Supp. 3d at 459-60.  The patentee alleged that the supplier's products were "examples" of infringing products because the products contained certain standard-compliant components supplied by supplier.  *Id.* at 459.  This Court determined it had jurisdiction to hear the supplier's declaratory judgment case because the infringement theories in the Texas cases were not "customer-specific." *Id.* at 462.  In the *Mobile Telecommunications* Texas cases, the patentee had accused *all* products that used

6

the standard-compliant components of infringing.  *Id.*  Therefore, this Court held that the

"underlying circumstances giving rise to potential suits against [the supplier] are no different

than they are for a suit against these suppliers' customers."  *Id.*

In *GeoTag*, on similar facts, Judge Andrews found that patentee's infringement lawsuits

against a vendor's customers were tantamount to an implied assertion of direct and indirect

infringement against the vendor.  *GeoTag*, 2014 WL 4312167, at *1-*3.  Judge Andrews

explained that a vendor of infringing products can often directly infringe a patent based on the

same conduct as the vendor's customers under Section 271(a), and therefore there only needs to

be a "reasonable potential that such a claim could be brought."  *Id.* at *2 (internal quotations

omitted) (citing *DataTern*, 755 F.3d at 904-05).  Subject matter jurisdiction existed because the

patentee "could just as easily have asserted a claim of direct infringement against [the vendor]

based on the underlying circumstances in the customer suits."  *Id.*

Like patentees in *Mobile Telecommunications* and *GeoTag*, Parallel Networks could just

as easily have asserted claims of direct infringement of the Asserted Patents against Citrix based

on the same allegations it made against the Citrix Customers in the Texas Cases.  For example,

Parallel Networks has alleged that the ***use*** of the Accused Products by the Citrix Customers

directly infringed the Asserted Patents.  *See* Compl. at Exs. C & D, ¶¶ 29, 43 (alleging that Citrix

Customers infringed the Asserted Patents because of their "use of Citrix's NetScaler, Citrix

NetScaler, and/or Citrix ADC products, or by use of a web server in conjunction with the

same").   It is reasonable for Citrix to expect Parallel Networks to level similar allegations

against Citrix.  *Mobile Telecomms.*, 247 F. Supp. 3d at 462 ("For instance, '[i]t is entirely

possible that a customer and vendor can both directly infringe a patent based on the same

conduct.'").  For example, certain of the claims of the Asserted Patents, including claims 39-41

7

of the '554 patent, are system claims. Based on Parallel Networks' allegations in the Texas Cases, it was reasonable for Citrix to conclude that Parallel Networks could similarly allege that Citrix directly infringed these system claims by making, offering to sell, and selling the Accused Products. It was also reasonable for Citrix to determine it could be sued for direct infringement of the method claims of the Asserted Patents on the basis that Citrix practiced the claimed methods when it developed, tested, installed, or otherwise used, the Accused Products.

Parallel Networks insists this Court does not have subject matter jurisdiction because Citrix has not pled that it has an indemnity relationship with the Citrix Customers and because Parallel Networks could not assert a claim against Citrix for induced infringement. This precise argument was advanced by patentee and rejected in *Mobile Telecommunications. See* 247 F. Supp. 3d at 461. There, this Court explained that "[t]he existence of indemnification obligations or theories of indirect infringement are not prerequisites for establishing subject matter jurisdiction . . . . A declaratory judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer." *Id.* at 461-462.

Parallel Networks' argument fails too because Citrix *has* plausibly alleged that there is a substantial controversy regarding whether Citrix indirectly infringes the Asserted Patents. Parallel Networks alleged in the Texas Cases that "Citrix provides its customers with the necessary components to infringe the Asserted Patents" and also "provides its customers with instructions to use the Accused Products in a manner which allegedly infringes the Asserted Patents." *See* Exs. C & D to Compl., ¶¶ 30-37, 44-48; *see also id.*, ¶ 35 (alleging that Citrix manuals instruct Citrix Customers' "system and network administrators on how to install, set up, and use the Accused Products"); *DataTern*, 755 F.3d at 902-03 (patentee's citations to supplier's

8

user guides in suits against customers of supplier "strongly support[ed] the conclusion that the district court had jurisdiction" in declaratory judgment suit filed by supplier against patentee). "[W]hen the holder of a patent with method claims accuses the supplier's customers of direct infringement based on their use of the supplier's product in the performance of the claimed method, an implicit assertion of indirect infringement by a supplier may arise." *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375-76 (Fed. Cir. 2011).  Because Parallel Networks has asserted that the Citrix Customers directly infringe the method claims of the Asserted Patents by using Citrix's products, there is "at least a reasonable potential" that Parallel Networks will bring a claim against Citrix for indirect infringement of the Asserted Patents in addition to a claim for direct infringement.  *Id.*

Parallel Networks argues that Citrix was required to plead pre-suit knowledge, but no such rigid pleading rule exists with respect to declaratory judgment lawsuits.  *Safenet, Inc. v. Uniloc USA, Inc.*, C.A. No. 6:15-CV-97-RWS-KNM, 2015 WL 7272196, at *2 (E.D. Tex. Nov. 17, 2015) ("It would seem convoluted to require a declaratory-judgment plaintiff to plead facts that would show their liability….).   As one court, citing the Supreme Court's *MedImmune* decision, explained:

> A declaratory judgment action, such as this, presents a different viewpoint from a typical motion to dismiss.  The issue here is not, as [patentee] has characterized it, whether [declaratory plaintiff] pled sufficient facts of every element of … infringement such that [patentee], if it had filed the claim against [declaratory plaintiff], would plausibly have a claim for relief and survive a motion to dismiss….  Rather, the proper inquiry is whether [declaratory plaintiff] has pled sufficient facts such that it is reasonable that [patentee] could potentially bring a claim of … infringement against [declaratory plaintiff] at a later date.

*Id.* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)).

Citrix has certainly pled facts to show it is reasonable that Parallel Networks could potentially bring a claim of indirect infringement against Citrix.  For example, Citrix pled in its

Complaint that (1) the Asserted Patents expired on April 23, 2016 (Compl., ¶¶ 22, 24); (2) Citrix began selling the Accused Products more than a decade before the Asserted Patents expired (*id.*, ¶ 21); (3) the predecessor-in-interest of Parallel Networks and the Asserted Patents sued Citrix for patent infringement in 2013 (*id.*, ¶ 8); and (4) since 2005, the Asserted Patents have been asserted against more than 30 companies (*id.*, ¶ 26).  These facts, especially when coupled with Parallel Networks' infringement allegations against the Citrix Customers in the Texas Cases, demonstrate why it was reasonable for Citrix to assert that Parallel Networks could potentially bring a claim of indirect infringement against Citrix.

### ii.   Parallel Networks' Litigation History Supports Declaratory Judgment Jurisdiction.

Parallel Networks' prior litigation conduct also establishes that an actual controversy exists between the parties.  First, Parallel Networks has an extensive history of suing technology suppliers and vendors, not just their customers, particularly as evidenced by the prior suit against Citrix filed by the predecessor entity to Parallel Networks and the Asserted Patents.  *See* Compl., ¶ 8; *see Parallel Networks, LLC v. Citrix Systems Inc.*, C.A. No. 13-cv-1414 (D. Del.).  In fact, Parallel Networks has sued both suppliers and customers of technology products for infringement of the same Asserted Patents at issue here.[1]

Parallel Networks' prior litigation conduct with respect to Citrix and the Asserted Patents is clearly relevant.  Indeed, "[p]rior litigious conduct is one circumstance to be considered in

---

[1] *See, e.g., Parallel Networks Licensing, LLC v. Superior Turnkey Solns. Grp., Inc.*, C.A. No. 4-19-cv-516 (E.D. Tex.); *Parallel Networks Licensing, LLC v. RamQuest, Inc.*, C.A. No. 4-19-cv-487 (E.D. Tex.); *Parallel Networks Licensing LLC v. International Business Machines Corp.*, C.A. No. 13-cv-2072 (D. Del.); *Parallel Networks Licensing LLC v. Microsoft Corp.*, C.A. No. 13-cv-2073 (D. Del.); *Parallel Networks, LLC v. Microsoft Corp.*, C.A. No. 2-09-172 (E.D. Tex.); *epicRealm Licensing, LLC v. Franklin Covey Co. et al*, C.A. No. 5-07-126 (E.D. Tex.); *epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, C.A. No. 5-07-cv-125 (E.D. Tex.); *epicRealm Licensing, LLC v. Autoflex Leasing, Inc. et al*, C.A. No. 2-05-cv-163 (E.D. Tex.); *epicRealm Licensing, LLC v. The Macerich Co.*, C.A. No. 5-07-cv-181 (E.D. Tex.).

10

assessing whether the totality of circumstances creates an actual controversy." *Prasco*, 537 F.3d at 1341. Even if a "patentee's aggressive enforcement strategy" is not directed at the declaratory judgment plaintiff—and in this instance, patentee's predecessor's aggressive enforcement strategy ***was*** previously directed at Citrix—this behavior can support jurisdiction over a declaratory judgment action. *DataTern*, 755 F.3d at 906 (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737-38 (Fed. Cir. 1988)).

In *DataTern*, for example, the Federal Circuit addressed Microsoft's argument that DataTern's prior litigious conduct was evidence of a substantial controversy between the parties. *DataTern*, 755 F.3d at 906-07. The Federal Circuit found this argument unpersuasive not because past litigation conduct is irrelevant when considering whether an actual controversy exists, but only because (1) DataTern's history showed it tended to sue software users, not software suppliers such as Microsoft, and (2) the record did not show that Microsoft encouraged the acts of infringement DataTern had highlighted in its lawsuits against users of Microsoft software. *Id.* Unlike DataTern's litigation conduct, Parallel Networks' litigation history is rife with lawsuits against both suppliers and end-users of products like the Accused Products in the Texas Cases. More importantly, Parallel Networks has specifically alleged in the Texas Cases that Citrix encouraged alleged infringement by the Citrix Customers through its dissemination of product manuals. Parallel Networks' litigation history is persuasive evidence that Citrix could be the next party to be sued by Parallel Networks for infringement.

### B. Transfer Under 28 U.S.C. § 1404 Is Improper

The private and public interest *Jumara* factors overwhelmingly weigh against transfer and Parallel Networks' alternative request to transfer this case to the Eastern District of Texas should be denied. In fact, although Parallel Networks now claims this District is not an appropriate forum, Parallel Networks is a limited liability company organized under the laws of

11

Delaware and previously filed several lawsuits in this District, including a suit brought against Citrix by its predecessor company.  What is more, Parallel Networks' predecessor argued this District is convenient when opposing transfer to the Eastern District of Texas.  *See In re Parallel Networks, LLC ('111) Patent Litig.*, MDL No. 2355 (J.P.M.L. 2012), D.I. 140 (Ex. 1).

### i.      The Private Interest Factors Weigh Against Transfer

*Jumara*'s private interest factors include: (1) the plaintiffs' preference as manifested in the original choice of venue; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of relevant records.  55 F.3d at 879.  These six private interest factors either weigh strongly against transfer or, at worst, are neutral.

First, plaintiff's forum preference weighs strongly against transfer. "[A] plaintiff's choice of a proper forum is a paramount consideration" and "should not be lightly disturbed."  *Shutte*, 431 F.2d at 25 (3d Cir. 1970).  Transfer is especially inappropriate where, as here, plaintiff's choice of forum is also where plaintiff is incorporated and where defendant is organized.  Indeed, "[u]nless the defendant is 'truly regional in character' . . . transfer is almost always inappropriate."  *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011).  To that end, "[w]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware."  *Id.* at 482 (citation omitted).  "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."  *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, C.A. No. 18-2019-RGA, 2019 WL 2270440, at *3 (D. Del. May 28, 2019) (citation omitted).

12

Plaintiff's reliance on *CVIN* is misplaced.  In *CVIN*, plaintiff was not incorporated in Delaware, and defendant was a "quasi-regional company" that was "not allowed to market its services to Delaware residents."  Motion at Ex. 1, 30:2-31:22.  Accordingly, this Court reduced "somewhat" the weight of the first factor due to the defendant's limited contacts with Delaware. Unlike plaintiff in *CVIN*, Parallel Networks is a Delaware company with close ties to this District.  Not only has Parallel Networks chosen to organize under Delaware law, Parallel Networks and its related and predecessor companies have filed several lawsuits in this District, including a lawsuit filed against Citrix.  *See, e.g., Parallel Networks Licensing LLC v. Microsoft Corp.*, C.A. No. 13-2073-KAJ-SRF (D. Del.); *Parallel Networks Licensing LLC v. Int'l Bus. Machs. Corp.*, C.A. No. 13-2072-KAJ-SRF (D. Del.); *Parallel Networks, LLC v. Citrix Systems Inc.*, C.A. No. 13-cv-1414 (D. Del.).

Second, Parallel Networks' forum preference should be given no weight.  Parallel Networks contends that its preference to litigate in the Eastern District of Texas is entitled to "substantial weight" because Parallel Networks' "sole employee, sole office, two out of the three inventors of the patents in suit, the officers of the original assignee of the patents in suit, the attorneys who prosecuted the patents in suit, . . . and all of its relevant documents are located" in the Eastern District of Texas.  Motion at 9.  Remarkably, all publicly available information suggests that Parallel Networks' claims are simply not true.  In fact, as alleged both in Citrix's Complaint and in Parallel Networks' complaints in the Texas Cases, Parallel Networks is located in Dallas, which is in the Northern, not Eastern, District of Texas.  From the face of the Asserted Patents, it also appears that at least two of the inventors, at the time of the issuance of the patents, were located in Rowlett (which is located in N.D. Tex.) and Richardson (most of which is located in N.D. Tex.).  Compl. at Exs. C, D.  Furthermore, the attorneys who prosecuted the

13

patents were located in Los Angeles ('554 patent, Power of Attorney, Ex. 2) and Dallas ('335 patent, Power of Attorney, Ex. 3), and IPRs of the Asserted Patents were litigated by attorneys in Dallas (IPR2015-00483, Power of Attorney, Ex. 4; IPR2015-00485, Power of Attorney, Ex. 5).

Parallel Networks' forum "preference" is not only based on inaccurate facts, it is also duplicitous.  In 2011, Parallel Networks' predecessor opposed transfer from this District to the Eastern District of Texas because the "EDTX has no present connection to any party: neither Parallel nor any Defendant is located in EDTX.  Moreover, the majority of the Defendants in the Delaware Action . . . have no connection with the proposed transferee forum."  *In re Parallel Networks*, Ex. 1 at 2.  Parallel Networks does not explain why it now takes a position diametrically opposed to an argument advanced by its predecessor in a prior case it voluntarily filed in this District.  Indeed, Parallel Networks has provided no facts, through declaration or otherwise, that demonstrate that Citrix or Parallel Networks have any substantial connection to the Eastern District of Texas.  The numerous lawsuits Parallel Networks has voluntarily filed in this District, coupled with its predecessor's aggressive opposition to transferring litigation from this District to the Eastern District of Texas, demonstrate why Parallel Networks' newfound preference to litigate in the Eastern District of Texas should be given no weight.

The third private interest factor, whether the claims arose elsewhere, also weighs against transfer.  The parties are organized or incorporated under Delaware law.  Parallel Networks has directed its patent assertion business throughout the United States, including in this District. Compl., ¶¶ 17, 18.   Moreover, as Citrix alleges in its Complaint, Citrix's products and services, including the Accused Products at issue in this case and in the Texas Cases, are provided to customers throughout the United States and worldwide, including to over 90% of Fortune 500

companies.  Compl., ¶¶ 2, 4.  This lawsuit and the complaints in the Texas Cases concern products sold throughout the world, including in this District.

Fourth, the convenience of the parties based on their relative physical and financial conditions is, at worst, neutral.  In assessing this factor, courts consider the parties' physical location, the associated logical and operational costs to the parties' employees in traveling to Delaware for litigation purposes, and the relative ability of each party to bear these costs in light of its size and financial wherewithal.  *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017). Citrix has its principal business operations on the east coast in Florida (Compl., ¶ 14), and many of its engineers and potentially responsive witnesses are located elsewhere around the country.  In any event, it is no more convenient (and likely less convenient) for Citrix witnesses to travel to Sherman, Texas (where the Texas Cases are pending), as compared to Wilmington, Delaware (with its nearby international airport in Philadelphia).

The convenience to Parallel Networks should be given no weight.  Parallel Networks is organized under Delaware law and previously filed suit in this District.  In a case involving Parallel Networks' predecessor, epicRealm, Judge Robinson explained, "[c]onsidering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial.  The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant, is not overly burdensome."  *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.").[2]

---

[2] Parallel Networks relies on Judge Robinson's cursory decision to transfer Microsoft's third-party claim in *Quinstreet Inc. v. Parallel Networks, LLC*, C.A. No. 6-495-SLR (D. Del. Nov 3, 2009).  Mot. at Ex. 2.  By the time Judge Robinson decided the transfer motion in *Quinstreet*,

The fifth and sixth factors, the convenience of witnesses and records, are, at worst, neutral.  Factors five and six should be weighed "only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and only when records cannot be produced in the alternative forum.  *Jumara*, 55 F.3d at 879.  Parallel Networks has failed to identify any specific witness or record that is unavailable in Delaware but would be available in the Eastern District of Texas.  For example, Parallel Networks has not identified where the inventors currently reside, whether the inventors will even be required for trial, whether they have refused to appear, or whether their testimony can be taken by deposition and played at trial.  *See Quinstreet*, No. 6-495-SLR, D.I. 16 at *9 ("From a practical standpoint, much of the testimony presented at trial these days is presented via recorded depositions, as opposed to witnesses traveling and appearing live.") (Ex. 8).

### ii.    The Public Interest Factors Weigh Against Transfer

The relevant *Jumara* public interest factors include[3]: (1) practical considerations that could make trial easy, expeditious, or inexpensive; (2) the local interest in deciding local controversies at home; and (3) the familiarity of the trial judge with applicable law.  55 F.3d at 879.  First, practical considerations for trial are, at worst, neutral.  Parallel Networks can hardly claim litigating in this jurisdiction imposes a substantial burden.  Parallel Networks chose to

---

however, the underlying declaratory judgment actions filed by Oracle, a Delaware corporation, and Quinstreet, a company that conducted substantial business in Delaware, had already been resolved through settlement.  *Quinstreet, Inc. v. Parallel Networks, LLC*, C.A. No. 6-495-SLR, D.I. 179 at 1, n.3 (D. Del. July 9, 2009).  (Ex. 6). Troublingly, Parallel Networks ignores Judge Robinson's much more relevant decision earlier in that same litigation to deny a motion to transfer to the Eastern District of Texas filed by Parallel Networks' predecessor-in-interest.  *See Oracle Corp. v. epicRealm Licensing, LP*, C.A. No. 6-414-SLR, D.I. 21 (D. Del. Mar. 26, 2007). (Ex. 7).

[3] The parties agree two *Jumara* public interest factors are not relevant here: the enforceability of the judgment and the familiarity of the trial judge with the applicable state law in diversity cases. Any judgment will be equally enforceable in either jurisdiction, and the declaratory judgment Citrix seeks arises under federal patent law.

16

become a Delaware company and to file numerous lawsuits here.  Further, Parallel Networks has

only one employee, and that employee presumably would not be greatly inconvenienced by

travelling to Delaware for trial.  Parallel Networks' argument that the location of records weighs

in favor of transfer ignores the practical realities of modern trials and the efficiencies gained by

litigating in a sophisticated forum with professional trial services.

Second, local interests in deciding local controversies at home, weighs slightly against

transfer.  While it is true that "patent issues do not give rise to local controversy or implicate

local interests," (Motion at 11), Delaware does have a substantial interest in adjudicating

disputes involving companies organized and incorporated under Delaware law.  *Checkpoint*

*Software,* 797 F. Supp. 2d at 486.

Third, public policies of the fora weighs against transfer.  Delaware's public policy

encourages Delaware corporations and companies to resolve their disputes in Delaware courts.

*Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012).

### iii.     The Customer-Suit Exception to the First-to-File Rule Requires This Action Be Heard in This District.

This declaratory judgment action represents the definitive case where the customer-suit

exception to the first-to-file rule applies.  Parallel Networks filed patent infringement suits

against the Citrix Customers in the Eastern District of Texas.  Parallel Networks does not allege

that the Citrix Customers play a role in developing the Accused Products.  Instead, Parallel

Networks alleges that the Citrix Customers infringe the Asserted Patents exclusively because of

their *use* of the Accused Products.  Because Citrix, not the Citrix Customers, is the manufacturer

of the Accused Products, Citrix has a greater interest in defending its products against Parallel

Networks' infringement allegations than do the Citrix Customers.

17

Citrix filed this declaratory judgment action seeking a finding of non-infringement of the same Asserted Patents in the Texas Cases because it is the "true defendant" in those cases.  *In re Nintendo*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)); *see also Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) (stating the customer suit exception "recognizes that it is more efficient for the dispute to be settled directly between the parties in interest").  Citrix spent many years and substantial resources developing the Accused Products. The Citrix Customers, in sharp contrast, had no involvement in the development of the Accused Products.  While the Citrix Customers have an interest in defending themselves against Parallel Networks' infringement allegations, this interest is vastly outweighed by Citrix's interest in "protect[ing] its customers, as a matter … [of] good business, in order to avoid the damaging impact of an adverse ruling against its products."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

This declaratory judgment action is similar to *Ricoh*, where the patentee's infringement allegations focused on the customers' use of accused infringing circuit boards made by the manufacturer.  *Ricoh*, 279 F. Supp. 2d at 558.  The manufacturer, Synopsys, filed a declaratory judgment action in the Northern District of California seeking a judgment of non-infringement and invalidity concerning the same patent asserted against Synopsys' customers in this District.  *Id.* at 556.  Judge Sleet found the customer-suit exception applied because the plaintiff's infringement claims against Synopsys' customers were "fundamentally claims against the ordinary use of Synopsys' Design Compiler."  *Id.* at 558.  The Court reasoned that the declaratory judgment action in the Northern District of California would dispose of the

infringement allegations against Synopsys' customers in this District, rendering the first-to-file rule inapplicable.  *Id.*

Just as in *Ricoh*, the customer-suit exception squarely applies here and this suit should proceed because the suits in both districts are substantially similar and a determination of the infringement issues in this action will likely be dispositive of the Texas Cases.  *Id.*; *see also Spread Spectrum*, 657 F.3d at 1358 (finding the manufacturer's case will take precedence over a customer suit when it has "the potential to resolve the 'major issues' concerning the claims against the customer"); *In re Nintendo*, 756 F.3d 1363 at 1366 (applying customer-suit exception because patentee's claims against the retailers were dependent upon infringement claims against Nintendo); *see also Microsoft Corp. v. GeoTag*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (denying defendant's request to transfer declaratory judgment action to the Eastern District of Texas because of customer-suit exception).

Proceeding with a single lawsuit in this District in lieu of the Texas Cases will promote efficiency and judicial economy.  *See Spread Spectrum,* 657 F.3d at 1357 ("the guiding principles in the customer suit exception cases are efficiency and judicial economy").  While Parallel Networks takes issue with Citrix's decision not "to join the Texas Cases directly," (Motion at 12), both Citrix Customers have already moved to stay their respective lawsuits. STSG, for example, filed a motion to stay based on the customer-suit exception to the first-to-file rule pending resolution of this declaratory judgment action.  *Superior Turnkey*, C.A. No. 4-19-cv-516, D.I. 17 (Ex. 9).[4]

---

[4] RamQuest filed a motion to stay pending completion of the instituted *inter partes* reviews of the Asserted Patents.  *RamQuest*, C.A. No. 4-19-cv-487, D.I. 16 (Ex. 10).

19

Parallel Networks mistakenly argues that this Court's decision in *Air Products* shows why "the customer suit exception does not apply." Motion at 14.  The customer suit exception was inapplicable in *Air Products* because the patentee's infringement allegations were not solely based on the customer's use of the manufacturer's product.  *Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001).  The patentee in *Air Products* had alleged that the customer infringed the asserted patents based on the customer's nitrogen product units, of which the manufacturer's equipment was "just a part." *Id.*  Here, however, Parallel Networks' *sole and exclusive* basis for alleging infringement against the Citrix Customers is their use of Citrix's products.  Under these facts, the Federal Circuit and this Court have repeatedly held that the customer-suit exception to the first-to-file rule is applicable.  *See, e.g., In re Nintendo*, 756 F.3d at 1365; *Spread Spectrum Screening*, 657 F.3d at 1357; *Kahn*, 889 F.2d at 1081; *Ricoh,* 279 F. Supp. 2d at 557; *Katz*, 909 F.2d at 1464; *Microsoft*, 847 F. Supp. 2d at 681.

### C.     Justice Requires That Citrix Be Given Leave to Amend To Address Any Pleading Deficiencies Found by The Court

If the Court has any concerns regarding the sufficiency of Citrix's Complaint, Citrix respectfully requests leave to cure these deficiencies by filing an amended complaint with additional jurisdictional facts.  Such relief is appropriate under the circumstances.  *See Intel*, 2015 WL 649294, at *14 (dismissing without prejudice certain claims and recommending plaintiff be given leave to file an amended complaint addressing jurisdictional deficiencies).

## V.     CONCLUSION

For the foregoing reasons, Citrix respectfully requests that the Court deny Parallel Networks' motion to dismiss or, in the alternative, transfer.

20

Dated:  January 9, 2020

**OF COUNSEL**

Michael G. Strapp (*pro hac vice*)
Safraz W. Ishmael (*pro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA  02110-1447
Telephone:  (617) 406-6031
michael.strapp@dlapiper.com
safraz.ishmael@dlapiper.com

**DLA PIPER LLP (US)**

 _/s/ Denise S. Kraft_
Denise S. Kraft (DE ID No. 2778)
Brian A. Biggs (DE ID No. 5591)
Erin E. Larson (DE ID No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone:  (302) 468-5700
Facsimile: (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com
erin.larson@dlapiper.com

***ATTORNEYS FOR CITRIX SYSTEMS, INC.***

21