**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CITRIX SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-2005-LPS |
| ) | |
| PARALLEL NETWORKS LICENSING, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION AND ORDER

As announced at the hearing on May 4, 2020, I recommend DENYING Defendant's Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter. (D.I. 9.) In addition, Defendant's Motion to Transfer the case to the Eastern District of Texas is GRANTED. (*Id.*) My Report and Recommendation and Order was announced from the bench at the conclusion of the hearing as follows:

> I am prepared to issue a Report and Recommendation and Order on the pending motion. (D.I. 9.) It's Defendant Parallel Networks Licensing, LLC's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, transfer to the Eastern District of Texas. I will not be issuing a separate written report, but I will issue a Report and Recommendation and Order that incorporates by reference my oral ruling today.
>
> I want to emphasize before I get into the ruling that while I'm not issuing a written opinion, we have followed a full process for making the decisions that I'm about to state. There was full briefing on the motion. (D.I. 10, 12, 13.) We had oral argument here today. Defendant also filed two notices of subsequent authority and all of the submissions and arguments have been carefully considered.
>
> For the reasons I will state, I recommend that the Court DENY Defendant's motion to dismiss for lack of subject matter jurisdiction. In addition, I'm GRANTING Defendant's motion to transfer this matter to the Eastern District of Texas.
>
> My recommendation and order are based, in part, on the fact that there are related proceedings pending in the Eastern District of Texas. I'll briefly summarize

the procedural history of those cases as well as this case. The complaints [filed] by Parallel in the Eastern District of Texas are attached as Exhibits C and D to Citrix's declaratory judgment complaint in this Court. (D.I. 1, Ex. C, D.)

The plaintiff in this case is Citrix Systems. According to the complaint, Citrix acquired a company called NetScaler, Inc., in 2005. Prior to that time, NetScaler had been developing a technology that included techniques to efficiently pool, multiplex, and reuse network connections between clients and servers over the Internet. Citrix acquired the NetScaler technology and continued developing it. According to the declaratory judgment complaint, the NetScaler technology has been part of the Citrix portfolio of products and services since 2005. Relevant to this case, Citrix sells and has sold a networking product called Citrix ADC, formerly called NetScaler ADC, which is an application delivery controller and load balancer. (D.I. 1 ¶ 3.)

Parallel Networks Licensing, LLC, claims to be the owner of U.S. Patent Nos. 5,894,554 ("'554 patent") and 6,415,335 ("'335 patent"). The '554 patent issued on April 13, 1999, and is entitled "System for Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and Routing to Page Server Thereby Releasing Web Server to Process Other Requests." The '335 patent issued from a divisional application of the application reading to the '554 patent and is entitled "System and Method for Managing Dynamic Web Page Generation Requests." The asserted patents share a specification and generally relate to load balancing for computer servers that process webpage generation requests. (*See* '554 patent, col. 2:17-19, 1:9-2:37, cl. 12; *see also* '335 patent, cl. 43.) The '554 and '335 patents expired in 2016.

On July 3, 2019, Parallel sued a company called RamQuest Software, Inc. in the Eastern District of Texas for infringement of the '554 and '335 patents. *Parallel Networks Licensing, LLC, v. RamQuest Software Inc.*, No. 19-487-ALM (E.D. Tex.). RamQuest is one of Citrix's customers.

Paragraphs 28 and 42 of Parallel's complaint against RamQuest allege that it directly infringes one or more claims of the '554 and '335 patents by using "one or more servers that may load-balance among other servers, which by way of example, includes" Citrix's NetScaler and ADC products. (D.I. 1, Ex. C ¶¶ 28, 42.) More specifically, in paragraphs 29 and 43, Parallel alleges RamQuest directly infringes "at least claim 12 of the '554 Patent" and "at least claim 43 of the '335 Patent by its use of" Citrix's NetScaler and ADC products. (*Id.* ¶¶ 29, 43.) Parallel does not identify any other suppliers' products as being used by RamQuest in an infringing way and it specifically relies on Citrix-supplied user manuals and documentation in its description of the alleged infringement. For example, paragraphs 30, 32, 37, and 45 each contain screenshots of documents from the Citrix website describing how its products work. (*Id.* ¶¶ 30, 32, 37, 45.)

RamQuest's answer to Parallel's complaint in the Eastern District of Texas alleges that the asserted claims are invalid and that RamQuest does not infringe. RamQuest also asserted counterclaims of non-infringement and invalidity. RamQuest also sought to stay the infringement action due to pending *inter partes* review. The district court in the Eastern District of Texas denied the stay, and a scheduling order has been entered in that case. The *Markman* hearing is scheduled for July 20, 2020.

Soon after filing suit against RamQuest, on July 12, 2019, Parallel sued another one of Citrix's customers, Superior Turnkey Solutions Group, Inc. *Parallel Networks Licensing, LLC v. Superior Turnkey Solutions Group, Inc.*, No. 19-516-ALM (E.D. Tex.). Parallel's complaint against Superior Turnkey also alleges infringement of the '554 and '335 patents, and mirrors Parallel's complaint against RamQuest. Superior Turnkey filed a motion to stay in that case in favor of the declaratory judgment action filed by Citrix in this Court. *Superior Turnkey*, No. 19-516-ALM, D.I. 17 (attached to Citrix's brief at D.I. 12, Ex. 9). Last Friday, May 1, 2020, the district court in the Eastern District of Texas also denied Superior Turnkey's motion to stay. *Superior Turnkey*, No. 19-516-ALM, D.I. 36. The Eastern District of Texas has entered a scheduling order in that case, with the *Markman* hearing scheduled for July 20, 2020.

More than three months after Parallel filed suit against RamQuest and Superior Turnkey, on October 24, 2019, Citrix filed a complaint in this Court requesting a declaratory judgment that Citrix did not infringe the '554 and '335 patents through its making, using, sale or offering for sale of its Citrix ADC, aka NetScaler ADC, products. (D.I. 1.) Parallel filed the present motion on December 18, 2019, requesting that the Court either dismiss Citrix's complaint for lack of subject matter jurisdiction or transfer the case to the Eastern District of Texas. (D.I. 9, 10.)

Parallel first argues that this Court should dismiss under Federal Rule of Civil Procedure 12(b)(1) because it lacks subject matter jurisdiction to hear Citrix's declaratory judgment suit. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

While there is no bright-line rule for whether a dispute presents a case of actual controversy, the Supreme Court stated the requirement in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), "that the dispute be definite and concrete, touching the legal relations of the parties having adverse interests," and that it be "real and substantial" and "admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

3

The Declaratory Judgment Act allows a potential patent infringer to bring suit [against a patentee] when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1334 (Fed. Cir. 2008).

In the context of patent infringement disputes, "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by a patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). However, where a patentee accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier may bring a declaratory judgment action, for example, where the circumstances show that there is a substantial controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers. *Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904–05 (Fed. Cir. 2014).

In determining whether such a substantial controversy exists, the Federal Circuit tells us that we should look to see if there's a dispute as to a legal right, which requires us to "look to the elements of the potential cause of action." *Arris*, 639 F.3d at 1374-75; *DataTern,* 755 F.3d at 904–05. To show a substantial controversy regarding whether a supplier's actions constitute induced infringement, the actions of the patentee and other circumstances must suggest that the elements of induced infringement might be met, such that there is a reasonable potential that a claim against the supplier might be brought by a patentee. *DataTern*, 755 F.3d at 905. A decision as to whether an actual controversy exists "will necessarily be fact specific and must be made in consideration of all the relevant circumstances." *W.L. Gore & Assocs., Inc. v. AGA Med. Corp.*, No. 11-539-JBS-KMW, 2012 WL 924978 at *4 (D. Del. Mar. 19, 2012) (citing *MedImmune, Inc.,* 549 U.S. at 127).

The declaratory judgment plaintiff has the burden to establish the existence of an Article III case or controversy. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014); *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, No. 12-1301-SLR, 2013 WL 1856308, at *2 (D. Del. May 2, 2013).

Parallel moves to dismiss Citrix's complaint on the basis that there is no actual controversy between it and Citrix. (D.I. 10 at 5-8.) Parallel argues this is so because the mere fact that Parallel sued Citrix's customers is not enough to establish declaratory judgment jurisdiction. Parallel also contends that there is no indemnity

4

agreement between Citrix and the Texas defendants. And it points out that it has not sued Citrix in Texas for induced infringement.

Citrix responds that the allegations of the Texas complaints give rise to a reasonable potential that Parallel will sue it for induced infringement. (D.I. 12 at 8.) Citrix also argues that Parallel misstates the law [insofar as Parallel argues] that Citrix must either have an indemnity relationship or fear of an infringement suit for inducement. (*Id.* at 2, 8 (citing *In re Mobile Telecommunications Techs., LLC*, 247 F. Supp. 3d 456, 461 (D. Del. 2017)).) In particular, Citrix argues that jurisdiction also lies here because of the likelihood that Parallel will sue it for direct infringement based on the same allegations in the Texas complaints. (*Id.* at 7-8.) Because I agree with Citrix's first argument, I do not need to reach its second.

Regarding induced infringement, I find that the circumstances in this case are similar in the important respects to those in the Federal Circuit's opinion in *DataTern*. In *DataTern*, the patentee (DataTern) sued several of SAP's customers in the Eastern District of Texas based on the customers' use of SAP's software. 755 F.3d at 902. DataTern sent the customers claim charts alleging infringement, referring extensively to functionality in SAP's software and citing SAP's user guides and documentation. SAP filed a complaint for a declaratory judgment of non-infringement and invalidity of the asserted patents.

The Federal Circuit affirmed the district court's holding that it had jurisdiction to hear the declaratory judgment complaint. The Federal Circuit relied heavily on the fact that the patentee had sent the customers claim charts that "extensively referred" to SAP's software functionality, its user guides, and its documentation. The claim charts prepared by the patentee in that case suggested that "SAP provide[d] its customers with the necessary components to infringe the [asserted] patents as well as the instruction manuals for using the components in an infringing manner." *Id.* at 905.

Here, like in *DataTern*, the Texas complaints allege direct infringement by Citrix's customers "based on [Citrix's] customers' use of [Citrix's software]." *Id.* at 905. (D.I. 1, Ex. C ¶¶ 28-29, 42-43; *Id.*, Ex. D ¶¶ 28-29, 42-43.) Additionally, the infringement allegations set forth in the Texas complaints rely exclusively on Citrix's software documentation to allege direct infringement by its customers. (D.I. 1 ¶¶ 35-38, 41; *id.*, Ex. C ¶¶ 28-37, 42-48; *id.*, Ex. D ¶¶ 28-37, 42-48.) As alleged by Citrix in its declaratory judgment complaint, the documents cited in the Texas complaints are "manuals" for Citrix's products that "instruct system and network administrators on how to install, set up, and use the [Citrix ADC and Netscaler ADC products] with networks and servers." (*Id.* ¶¶ 35, 13.)

Parallel points out that it sued Citrix's customers for their specific *use* of Citrix's products. That does not change the result here. First, the same was true in *DataTern*. More importantly, nothing in the Texas complaints alleges some use

other than the use suggested by Citrix in its documentation, which the Texas complaints explicitly and repeatedly reference.

Indeed, Parallel does not argue or explain why or how the specific use alleged in the Texas complaints is different than the use described in the Citrix documentation. Instead, Parallel argues that this case is distinguishable from *DataTern* because it "*can not* allege indirect infringement against Citrix because the patents here have expired." (D.I. 10 at 7 (emphasis added).) According to Parallel, it is "unaware of any knowledge possessed by Citrix, prior to the expiration of the patents in suit, that the Citrix products at issue in the Texas cases infringed or might infringe the asserted patents." (*Id.* at 7.)

That argument doesn't change the result. For one thing, Parallel doesn't actually say or agree that Citrix lacked knowledge of the asserted patents. It simply says that it's "unaware of such knowledge."

Today, during the hearing, Parallel suggested that, to move forward with a declaratory judgment action to obtain a declaration of no induced infringement, Citrix must admit or plead that it had knowledge of the patents at the relevant time. However, requiring Citrix to plead knowledge of the patents in the declaratory judgment complaint would be inconsistent with *DataTern*. The Federal Circuit in that case acknowledged that a claim of induced infringement requires that the inducer take an affirmative act to encourage infringement with the knowledge that the induced act constitutes patent infringement. But the court did not require the declaratory judgment plaintiff to actually plead that it had knowledge that the induced acts constitute patent infringement. Instead it stated that SAP's provision of instructions of how to use its product in an infringing manner was "evidence of the required mental state for inducing infringement." 755 F.3d at 905. And the court concluded that such evidence was enough to demonstrate a "substantial controversy" regarding whether SAP induced infringement. *Id.*

Moreover, as courts have recognized, requiring Citrix to affirmatively plead an element of Parallel's induced infringement case in order for declaratory judgment jurisdiction to exist would be antithetical to the idea of declaratory judgments, which seek to establish *non*-liability. *See Arris*, 639 F.3d at 1380; *Safenet, Inc. v. Uniloc USA, Inc.*, No. 15-97, 2015 WL 7272196, at *2 (E.D. Tex. Nov. 17, 2015) ("It would seem convoluted to require a declaratory-judgment plaintiff to plead facts that would show their liability when the exact purpose of the declaratory action is to state that there is no liability.").

I conclude that the circumstances here give rise to declaratory judgment jurisdiction regardless of Parallel's prior litigation conduct. But I note for the record that Parallel's litigation history doesn't weigh against a finding of jurisdiction. The Federal Circuit stated in *Prasco* that "prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." 537 F.3d at 1341. Citrix contends—

and Parallel does not seriously dispute—that it has a history of asserting its patents, asserting the specific patents-in-suit, asserting the patents-in-suit against suppliers (not just customers), and asserting other patents against Citrix. (D.I. 12 at 10-11.)

To sum up, the circumstances here give rise to a reasonable potential that Parallel will sue Citrix for induced infringement. Accordingly, I recommend that the Court deny Parallel's request to dismiss for lack of subject matter jurisdiction.

Parallel alternatively moves to transfer the case to the District Court for the Eastern District of Texas, pursuant to 28 U.S.C. § 1404(a). I find that transfer is appropriate under the specific facts of this case, particularly since the customer suits will be going forward in Texas.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." The first question is whether this case might have been brought in the proposed transferee district. Parallel says it might have been sued in the Eastern District of Texas. (D.I. 10 at 8.) There was some question about that in the briefing, but all parties seem to have agreed during the hearing here today that the case could have been brought in the Eastern District of Texas. Accordingly, I conclude that the case "might have been brought" in the Eastern District of Texas. However, that is not the end of the inquiry.

The Third Circuit has stated that there is "no definitive formula or list of the factors to consider," but it has set forth a list of twelve interests to be weighed in deciding whether to transfer a case under § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The first six are referred to as the private interests and the second six are referred to as the public interests. *Id.* The burden is on the moving party to establish that a balancing of proper interests weighs in favor of the transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

For the reasons I will discuss, several of the *Jumara* factors favor denying the motion to transfer. But I ultimately conclude that, under the particular circumstances here, the interests of justice would be better served by the parties resolving their dispute in the same forum as the customer suits—both of which will proceed in Texas regardless of this Court's decision on transfer. *See Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 478 (D. Del. 2011) (acknowledging the "fact-specific, case-by-case nature of a [transfer] decision").

The first *Jumara* factor is the plaintiff's choice of forum.

Citrix argues that its choice of forum should be of "paramount consideration" as long as there is a rational, legitimate reason to support its preference. (D.I. 12 at 12-13.) And Citrix argues that it has a legitimate rationale

7

for its choice to proceed in Delaware because both parties are incorporated in Delaware. Parallel counters that neither party is headquartered in Delaware and that Citrix maintains no physical presence in Delaware. (D.I 10 at 8-9; D.I. 13 at 5.)

At oral argument today, I asked the parties to address how the first *Jumara* factor relates to the first-filed rule. Contrary to Citrix's argument, it cannot be the case that a plaintiff's choice in the second-filed action is always "paramount." I recognize, of course, that the declaratory judgment plaintiff here is not a defendant in the Texas action. But to give the first *Jumara* factor dispositive weight under circumstances like these would not promote the interests of justice, because it would essentially promote litigating the same or similar issues in two districts at once. However, since Citrix has articulated a legitimate reason for wanting to litigate here, I conclude that the first factor favors denying the motion to transfer.

The second *Jumara* factor is the defendant's choice of forum.

This factor weighs in favor of transfer. Parallel has articulated a rationale for choosing the Eastern District of Texas, including the fact that its headquarters are located there, several of the potentially relevant witnesses are located there, and Parallel's books and records are located there. I find this factor favors transfer.

The third factor is whether the claim arose elsewhere.

Parallel argues that the claim arose in Texas because that is where it brought the customer suits. Citrix argues that it provides its products throughout the USA, and that the Eastern District of Texas cases concern products that it sold throughout the world including in this district.

I disagree with Parallel's analysis of this factor. Where the "claim" arose is where the conduct giving rise to an infringement claim arose. According to Citrix, that conduct happened throughout the world, including presumably in this district and in Texas. Accordingly, I find that the third factor is neutral.

The fourth factor is the convenience of the parties as indicated by their relative physical and financial condition.

Neither of the parties' arguments on this factor really address their relative physical and financial conditions. Parallel is clearly a smaller company, but I don't take it to be making the argument that it should get to litigate in Texas because it is smaller. I conclude that this factor is neutral here.

The fifth factor is the convenience of the witnesses.

The case law says that this factor only applies to the extent the witnesses are unavailable in the transferor forum. Parallel does not actually list any particular

8

witnesses in discussing this factor, but in discussing its own choice of forum, Parallel argues that "its sole employee, . . . two out of the three inventors of the patents in suit, the officers of the original assignee of the patents in suit, the attorneys who prosecuted the patents in suit, [and] the attorneys who were involved in the reexamination and *inter partes* reviews of the patents in suit" are located in the proposed transferee venue. (D.I. 10 at 9.) But Parallel has not made an argument that *any* of those potential witnesses are *unavailable* in Delaware. (D.I. 12 at 16.) Accordingly, I find this factor to be neutral.

I also note that there is case law from the Federal Circuit and district courts that considers the relative convenience for the witnesses between the two forums. For example, in *In re Google Inc.*, 588 F. App'x 988 (Fed. Cir. 2014), the Federal Circuit held that a second-filed manufacturer declaratory judgment suit in the Northern District of California should be given preference over a first-filed customer infringement suit pending in Texas in part because the products used to infringe were "designed and created" in the Northern District of California and many of the witnesses were located there. That is not the situation here. Although both parties are incorporated here, there's no suggestion that the products were developed here or that the witnesses are located here.

The sixth factor is the location of relevant books and records.

This factor weighs slightly in favor of transfer based on Parallel's assertion that its records are located in the Eastern District of Texas. However, given the realities of modern litigation, this factor is not very significant. *See Checkpoint*, 797 F. Supp. 2d at 485. Accordingly, I give it close to zero weight.

The parties only have a real dispute over three of the public factors: (1) the practical considerations that would make trial easy, expeditious or inexpensive; (2) the local interest in deciding local controversies at home; and (3) the public policies of the fora. The parties agree that two of the remaining factors—the "enforceability of the judgment" and the "familiarity of the trial judge with the applicable state law in diversity cases"—are not at issue here. (D.I. 10 at 11; D.I. 12 at 16 n.3.)

The last remaining public factor is "the relative administrative difficulty in the two forums resulting from court congestion." Parallel argues that this factor weighs slightly in favor of transfer because joining Citrix to the customer cases might "speed matters along." (D.I. 10 at 11.) That argument, however, goes more towards judicial efficiency, which I find more appropriately addressed under the practical considerations factor. Citrix does not address the court congestion factor. (*See* D.I. 12 at 16-17.) Thus I find that factor to be neutral.

The first disputed public factor is the practical considerations that would make trial easy, expeditious or inexpensive.

9

Parallel argues that the practical considerations favor transfer for essentially the same reason it argued that the private factors favored transfer. (D.I. 10 at 10-11.) Citrix counters that this factor is neutral because Parallel "can hardly claim litigating in this jurisdiction imposes a substantial burden." (D.I. 12 at 16.)

In connection with this factor, I find that Judge Andrews's recent ruling in *DropBox v. Motion Offense*, No. 19-1521-RGA, D.I. 24 (D. Del. Feb. 20, 2020), instructive. That case, like this case, was a declaratory judgment action brought by a software supplier that was filed second in time to the patentee's infringement suits against customers in the Eastern District of Texas. In *DropBox*, Judge Andrews found that the overlap in issues between the two cases strongly favored transfer of the declaratory judgment action. And he remarked that the interests of justice were served by litigating the overlapping cases in the same court by the same judge because it reduces the amount of litigation in the federal court system. I agree with Judge Andrews's [reasoning in that] case and I find that this factor strongly favors transfer.

Another public factor disputed here is the local interest in deciding local controversies at home.

I don't really understand this to be a local controversy. That said, Citrix argues that Delaware has an interest in litigating disputes arising between Delaware incorporated entities. It cites *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472 (D. Del. 2011), for the proposition that Delaware has an interest in litigating disputes arising between Delaware incorporated entities. I'll assume for the sake of argument this factor weighs against transfer. But I don't think it changes the result.

The last public factor disputed by the parties is the public policy of the forum.

Citrix argues that Delaware has a public policy of resolving disputes with entities incorporated in Delaware. (D.I. 12 at 17 (citing *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012).) Again, I'll assume for the sake of argument that this factor weighs against transfer. But I don't think it changes the result.

In sum, I find that the *Jumara* factors favor transfer.

To the extent that analysis of the first-filed rule and the so-called customer suit exception to the first-filed rule is a separate analysis from the *Jumara* factors, I also find that the case should be transferred under that analysis.

The general rule is that where two suits involving the same issues are filed in different forums, the first suit has priority. I recognize, of course, that Citrix is not a defendant in the Texas suit, and it is seeking to have its rights adjudicated.

But this is not a case where we are deciding whether or not to let this action proceed; the question we are deciding is *where* it should proceed. And the principle behind the first-filed rule suggests that it should proceed in the district where the first-filed case is proceeding.

As Citrix points out, however, there's an exception to the first-filed rule called the customer suit exception. Generally speaking, the exception permits later filed litigation brought by the manufacturer of infringing goods to take precedence over an infringement suit by the patentee against customers of the manufacturer. This exception goes back at least as far as the Supreme Court's opinion in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952).

As in this case, the Supreme Court in *Kerotest* was dealing with a situation where the first in time case was an infringement case against a manufacturer's customers and the second-filed case was a declaratory judgment case brought by the manufacturer against the patentee. There, the Supreme Court stated that "[i]f the patentee's suit against a customer is brought in a district where the manufacturer cannot be joined as a defendant, the manufacturer may be permitted simultaneously to prosecute a declaratory judgment against the patentee elsewhere." *Id.* at 186.

Citrix seeks to invoke the customer suit exception here, but it did not answer my question today about whether it cannot be joined as a defendant in the Eastern District of Texas. I don't blame it if it did not want to answer. But absent circumstances where the supplier cannot be joined as a defendant in the customer suit, the *Kerotest* formulation of the customer suit exception does not apply. *Cf. Air Prod. & Chemicals, Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 356-57 (D. Del. 2001).

When the Supreme Court made the statement in *Kerotest* that a manufacturer's second-filed declaratory judgment suit could proceed simultaneously if the manufacturer couldn't be sued in the jurisdiction where the customer suit was pending, the Court may have been assuming that a patentee would want to join the manufacturer as a defendant in its infringement case. Here, we have a situation where Parallel may not even want to joint Citrix as a defendant in the Texas case. But it does want Citrix's declaratory judgment suit to be transferred there. And the law as it currently stands permits transfer to Texas regardless of whether Citrix could have been sued there. *See Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-082-LPS, 2011 WL 2911797, at *3 (D. Del. July 18, 2011) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)).

As Citrix's counsel pointed out on the phone today, the customer suit exception is perhaps more often invoked in a request to stay earlier-filed litigation involving a customer while a later-filed case involving the manufacturer proceeds in another forum. *See, e.g.*, *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Importantly, last Friday, May 1, 2020, Judge Mazzant in the Eastern District of Texas denied Superior Turnkey's motion

11

to stay the Texas case based on the customer suit exception. *Superior Turnkey*, No. 19-516-ALM, D.I. 36 (E.D. Tex.). That means that both Texas customer suits are going to proceed.

So this is not a case like some of the cases cited in the briefing where I'm determining which case is going to go forward. The Texas cases are going forward. That is not my decision, and it is a decision that has already been made. And again, there is no suggestion that it is more convenient for the witnesses for the case to proceed in Delaware versus Texas. And no one is asking me to enjoin Parallel from pursuing the [Texas] litigations and no one is asking me to stay this case. The question I have to resolve is whether to let an overlapping case proceed here or whether I should transfer it to the Eastern District of Texas.

Both the Supreme Court and the Courts of Appeals have observed that there is a strong preference to avoid duplicative litigation. The first-filed rule, the customer suit exception, and 28 U.S.C. § 1404(a) all have the same goals; they are designed to facilitate the just, convenient, efficient, and less expensive determination. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). I conclude that those goals would be best served by transferring this case to the Eastern District of Texas.

That concludes my Report and Recommendation and Order.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated:   May 8, 2020

                                                                                              
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE